## CHARTER vs. STEVENS.

Although a mortgagee of chattels acquires an absolute title to them at law on a default of payment at the day, the mortgagor still has an equity of redemption which a court of chancery will enforce. *Per* BEARDSLEY, J.

And the mortgagee may resort to a court of equity to foreclose the mortgagor's right. *Per* BEARDSLEY, J.

The mortgagor's interest may also be extinguished by a public sale of the property after due notice. *Per* BEARDSLEY, J.

A tender by the mortgagor after forfeiture will not restore him to his former title, unless the mortgagee accept the money. *Per* BEARDSLEY, J.

But if the mortgagee *accept* the amount, even after forfeiture, such acceptance is a waiver of the forfeiture, and the mortgagee's title is extinguished. *Per* BEARDSLEY, J.

And where the mortgagee, after the day for payment had passed, sold part of the property by virtue of a power contained in the mortgage, for sufficient to pay the mortgage debt with interest and expenses; *held* that this was equivalent to absolute payment, and that the mortgagee's title to the chattels remaining unsold was extinguished; and the mortgagee having afterwards sold the residue of the property, *held also* that such sale was a conversion of it, for which the mortgagee was liable to the mortgagor in trover.

TROVER for horses and other property, tried at the Otsego circuit in September, 1843, before GRIDLEY, C. Judge. In the course of the trial the plaintiff limited his claim to an attempt to recover for one horse which the defendant took with the other property from the plaintiff's possession on the thirtieth day of March, 1843, and subsequently sold, claiming a right to do so by virtue of a chattel mortgage executed by the plaintiff to the defendant on the seventh of April, 1842. The mortgage was produced and proved by the defendant. It recites an indebtedness of the plaintiff to the defendant of $229,07 for rent and expenses of a distress, and by its terms, the plaintiff transfers a considerable amount of property, including the horse in question, to the defendant to secure such indebtedness; after which the following provision is inserted : " And it is hereby agreed that if the said Lemuel [the plaintiff] shall fail to pay the said sum of money and the interest thereof on or before the first day of December next, it shall be lawful for the said Stevens [the de-

fendant] to take possession of the said property, and sell the same at public auction after giving six days' notice of such sale, and satisfy said above mentioned sum of money and the interest of the same, and the costs of selling the same. And further, if said Lemuel shall at any time sell or attempt to sell or dispose of any of said property, or shall squander or in any way attempt to defeat the collection or security of said money or any part thereof, then it shall be lawful for said Stevens to take said property or any part thereof and sell the same as above provided, at any time before the first day of December next." The mortgage had been duly filed. Some payments had been made by the plaintiff on account of the money secured by the mortgage before, and some after, December 1, 1842, but it was not fully paid when the defendant seized the property in March, 1843. After the defendant had taken the property, he sold it at auction by virtue of the mortgage, in separate parcels, the horse in question being the last which was sold ; and it appeared that before the sale of the horse, enough had been raised by the prior sales to pay the balance due on the mortgage, with interest and the expenses. The defendant's counsel insisted that when the property was taken, the defendant's title to it had become absolute at law on account of the non-payment of the money at the day fixed for its payment, and that the plaintiff could not therefore recover. The judge charged the jury that, although the taking of the property out of the plaintiff's possession in the first instance was lawful, the mortgage debt being then unpaid, yet the defendant had no right to sell the remainder of the property after having sold enough to satisfy the balance due with the expenses. And as it appeared that at the time of the sale of the horse in question enough had been realized to satisfy the debt and expenses, such sale of the horse was a conversion of it, for which the plaintiff was entitled to recover. The jury found accordingly, and the defendant moves for a new trial on a case.

*R. W. Peckham,* for the defendant.

*J. A. Collier,* for the plaintiff.

*By the Court*, BEARDSLEY, J. The execution of the mort-gage transferred to the defendant a defeasible title to the prop-erty mortgaged, but which became absolute at law by the failure to pay at the stipulated time. The plaintiff, however, was not thereby divested of all interest in the property, for he still had an equity of redemption which the court of chancery would protect and enforce. On the other hand, the mortgagee might go into chancery to compel a speedy redemption or to foreclose that right, and the same object might be attained by a fair public sale of the property, on due notice to the mortgagor. These are familiar principles, and apply wherever the relation of mortgagor and mortgagee of personal property exists. (*Langdon* v. *Buel*, 9 *Wend.* 80; *Patchin* v. *Pierce*, 12 *id.* 61; *White* v. *Cole*, 24 *id.* 142, 3; *Story on Bail.* 2d ed. § 287; *Conard* v. *The At-lantic Ins. Co.*, 1 *Pet.* 441; *Hart* v. *Ten Eyck*, 2 *John. Ch. R.* 100.)

It has been adjudged that a tender of the mortgage money, after default in payment, would not, at law, re-invest the mort-gagor with his former title to the property; (*Patchin* v. *Pierce*, *supra, and* 8 *John.* 96;) but an acceptance of the amount ten-dered—that is, full payment being made, at any time—would, as between mortgagor and mortgagee, extinguish all right and interest of the latter in the property mortgaged. If made before the pay day had past, it would satisfy the conditions on which the property had been transferred, and thus defeat it altogether; and if made after forfeiture, it would be conclusive evidence that the forfeiture had been waived, and that all right under the mortgage was extinguished. (*Patchin* v. *Pierce, supra*; *Parks* v. *Hall*, 2 *Pick.* 206, 210, 211; *Barry* v. *Bennett*, 7 *Metc.* 354, 360, 361; *Hatch* v. *White*, 2 *Gal.* 152.)

I think what had been done in this case was equivalent to absolute payment of the mortgage money. The mortgage pro-vides that on failure to pay at the time specified, the mortgagee might " take possession of the said property and sell the same at public auction after giving six days' notice of sale and satisfy said above mentioned sum of money and the interest of the same and the costs of selling the same." Default in payment

had been made, and the mortgagee proceeded to sell under the authority contained in this clause of the mortgage. And before he sold the horse, which alone is now in question, enough money had been raised to satisfy the amount due and unpaid, with interest and expenses. The end and object of the mortgage had thus been fully attained, and the mortgagee had no longer any right to the property which remained unsold, or to sell it under the mortgage. He certainly was not bound to proceed and sell under this power, but might have retained all the property mortgaged as his own, leaving the mortgagor to enforce his right of redemption as he best could. But the mortgagee chose not to stand on that right: he elected to raise the amount of the debt due to him by a sale under the power. This he had a right to do ; but when his debt was thus paid, all right to the residue of the property was necessarily extinguished, and the power to sell became *ipso facto* void. For what honest purpose could the mortgagee claim any right to the property then remaining unsold, or proceed further under this power to sell ? His debt was paid. He had chosen to collect it under the power to sell, without involving the subject in a chancery litigation, and he should abide the result of the course he elected to pursue. In equity, after satisfying the mortgage debt, he would have been a trustee of the residue of the property, and must have accounted for it to the mortgagor. And having proceeded under a legal power to coerce payment of his debt, he must be taken to have waived all right and title to so much of the property as was not required for that purpose. The sale of the horse was therefore wholly unauthorized, and the action was sustained.

New trial denied.