and across the bows of the ferry-boat, rendering the schooner helpless to protect herself, and in otherwise improperly navigating the schooner.

It is not denied by the libellants, that, with the wind southwest, and the tide strong ebb, and the schooner and the ferry-boat both going the same way, up the river, the schooner being ahead, and to the eastward of the ferry-boat, the schooner luffed up, so as to head nearly directly across the river, and across the course of the ferry-boat, and, in so doing, shot ahead, and reached the line of the course on which the ferry-boat was proceeding. But it is contended for the libellants, that the master of the schooner, who was at her helm, observed the ferry-boat before and when he starboarded his helm to luff, and that the ferry-boat was then so far off from the schooner in a direct line, that she could, by porting her helm, have gone under the schooner's stern, and avoided the schooner. It is insisted, for the libellants, that, as the libel, in its fourth article, avers that the collision was the result, in part, of the fact that the ferry-boat did not change her course, so as to pass under the stern of the schooner, which she could easily have done, and as the answer says nothing about the ferry-boat's having ported, when she saw the schooner luffing, but only says that thereupon the ferry-boat's engine was stopped and reversed, the court must, although the answer contains a general denial of the allegations in the fourth article of the libel, regard the answer as not denying the allegation of a failure to port, but only as denying that the collision was the result of such failure to port. This criticism is more nice than sound. The evidence is satisfactory to my mind, that the pilot of the ferry-boat, as soon as he saw the movement of the schooner to luff, ported his helm and stopped and reversed his engine with all practicable despatch, but was unable to clear the schooner. The schooner was clearly in fault in luffing and changing her course as she did. She did so suddenly, and when the ferry-boat had no reason to suppose she would do so, and she threw herself across the course on which the ferry-boat was proceeding. The schooner turned very sharply, and, having on good headway, shot ahead across the course of the ferry-boat, and, thus presenting herself broadside to the tide, was carried down with great rapidity upon the ferry-boat, before the ferry-boat could get out of her way, by the use of all the means at the command of the ferry-boat. The fault of the schooner being clear, the only question is whether the ferry-boat was guilty of any fault contributing to the collision. I do not think she was. She was not in any such proximity to the schooner as would have rendered a collision probable, if the schooner had kept her course. Yet she was so near as to make it a fault on the part of the schooner, with the wind and tide such

as they were, and the speed and relative positions of the schooner and the ferry-boat such as they were, to luff and throw herself in such a position as to let the tide sweep her down upon the ferry-boat. The evidence is satisfactory, that the pilot of the ferry-boat saw the movement of the schooner to luff as soon as he ought to have seen it; that he immediately put his helm hard a-port, and rang to slow and stop and back, and then to hook on and back strong; that these bells were promptly obeyed; that the engine had made about six revolutions backward, when the vessels collided; and that the headway of the ferry-boat through the water was about stopped by that time. I can see no fault on the part of the ferry-boat, in view of the fault of the schooner, and must dismiss the libel, with costs.

## Case No. 7,246.

The J. B. LUNT.

[11 N. Y. Leg. Obs. 137.]

District Court, S. D. New York. 1853.

G. F. Betts, for libellants.
C. Van Santvord, for claimant.

BETTS, District Judge. 1. As between Hardy and the libellants, the latter, by force of the mortgage, are entitled at law to have possession of the brig against him, and hold it until satisfaction of the debt secured by it (Fuller v. Acker, 1 Hill, 473), and the right of possession is not interrupted by a seizure and sale under execution against the mortgagor while the possession remains with him (Id.). The conveyance of the vessel by way of mortgage, vested the legal title in the libellants, and would be sufficient to carry even the proceeds to them had she been disposed of. De Wolf v. Harris [Case No. 4,-221]; 2 Denio, 172; Id. 344; 3 Denio, 33.

2. The legal title vested in the libellants by the bill of sale entitled them to take possession of the vessel against the mortgagor without suit. Every outside equitable interest with which the legal title is opposed, must be left to the cognizance of other courts than the admiralty. The Sisters, 5 C. Rob. Adm. 138; 3 C. Rob. Adm. 176; 4 C. Rob. Adm. 225; Patchin v. Pierce, 12 Wend. 61. The court of admiralty has jurisdiction of actions to reclaim possession of vessels in behalf of the party holding the legal title. Abb. Shipp. 131, note 1. Judge Woodbury, in running over all the cases, admits it to be so when the consideration is of a maritime character. Leland v. The Medora [Case No. 8,237].

3. The claimant proves no tender of the debt on demand of it when the mortgage became forfeited,, nor previous suit brought. The assertion of a willingness to pay, not accompanied by proof of ability to perform, would raise no equity in behalf of the mortgagor, even if the court is permitted to take into consideration a bona fide attempt to satisfy the mortgage debt at such time. 3 Denio, 33; 12 Wend. 61. Although on the question of costs, such attempt would justly have great weight in behalf of the mortgagor or his assignee.

4. This mortgage being given by a foreign owner of the vessel for a maritime consideration, its lien is complete on compliance with the act of congress, and the mortgagee is not compelled to register it also under the state law. But the claimant is not in a position to raise the question of registry, because the sheriff sold him no more than the right and interest of the mortgagor in the vessel, and because he had actual notice of the existence of the mortgage and the consideration for which it was given.

5. The action is not to enforce payment of the money secured by the mortgage, and the court is not therefore required to meet the question which seemed to weigh with Judge Woodbury,—Dean v. Bates [Case No. 3,704]; Leland v. The Medora [supra]; Packard v. The Louisa [Case No. 10,652],—whether a mortgagee can resort to admiralty to foreclose his mortgage. This suit seeks to carry into effect the legal title of the libellants to the possession of the vessel, as against the right of the mortgagor alone, and when the possession is secured, the holders would be subject to the control of the proper judicatory in the exercise of their rights as mortgagees, and the allowance of all equitable interests of the claimant standing in the place of the mortgagor. The possession in point of fact was in the libellants, by admission of the mortgagor, when it was divested by the sheriff under the direction of the claimant.

6. In my opinion, the libellants are entitled to a decree for restoration of possession of the vessel to them. Independent of the legal title to possession, they had it in fact through their agent, Daggett, and, in relation to a vessel, the possession of the master and mortgagor, continuing after it

·is demanded by the mortgagees, becomes, as against him and a third party taking his interest with full notice, the possession of the mortgagees. It was not necessary to the protection of their rights against the claimant that they should have displaced the mortgagor from the vessel.

7. The question of costs will be reserved to enable the claimant to satisfy the court that the mortgagor made bona fide effort to satisfy the mortgage debt, and had means to do so before this suit was instituted, or that the libellants were guilty of oppression and inequitable measures in enforcing their legal right.

## Case No. 7,247.

The J. B. LUNT v. MERRITT et al.

[21 Betts, D. C. MS. 85.]

District Court, S. D. New York. May 20, 1853.

BETTS, District Judge. The original action was a petitory suit, by the mortgagees of the vessel after forfeiture, demanding possession of it as absolute owners, and the decree adjudged the title to be in the libellants, and ordered possession of the ship to be delivered to them. [Case No. 7,246.] A mortgage of chattels stands upon the footing of the common-law mortgage, and on failure by the mortgagor to perform the condition the property is vested in the mortgagee, and he may claim possession of it as his own. 4 Kent, Comm. 137; 2 Bl. Comm. 157; Coote, Mortg. 9. Although the rigor of absolute forfeiture of the estate on non-payment of the debt secured is relaxed, and the payment of the debt at any time before a legal foreclosure may have the effect of reinstating the mortgagee in his property (4 Kent, Comm. 158), and even if the mortgagor has an equity of redemption which will be protected in equity before it is foreclosed by a public sale of the property by the mortgagee (Charter v. Stevens, 3 Denio, 33), yet a court of equity never interferes to prevent the mortgagee from assuming the possession (Coote, Mortg. 330; Cholmondeley v. Clinton, 2 Mer. 359).

The motion in this instance asks that the decree of possession of the vessel to the libellants be varied by adding that it shall be at the election of the claimant to execute a bond with sufficient sureties, conditioned to pay the libellants the amount justly due to them on the indebtedness and liability for which the mortgage was taken, after deducting all payments made thereon, all moneys received by the libellants from bills of lading of the vessel or otherwise, which should be applied by the libellants thereon, and all offsets, counterclaims or discounts which, according to law or equity, should be deducted therefrom; and that, upon executing such bond, and the approval thereof by the district judge, the libel be dismissed. This application proposes a substantive change of the decree rendered, and independent of the formal objection to it, that it contravenes the established practice of the court in respect to rectifying a decree made on hearing (Ben. Adm. p. 548; Peru v. The North America [Case No. 11,017a]), it proposes that the court should assume a function never yet exercised in admiralty,—that of changing an action of possession founded upon the conveyance of a chattel by a mortgage deed into a proceeding in foreclosure of the mortgage according to the principles of a court of equity.

In my opinion, a court of admiralty is incompetent to entertain a libel merely for the purpose of foreclosing a mortgage, and, had this suit been instituted for that object, the action would have been dismissed; but there is now an additional impediment to the relief asked for, as the order pointed out would be the appropriate conclusion to a bill by the mortgagee, and, if such pro-