## BAXTER *a.* GILBERT.

*New York Common Pleas ; General Term, February,* 1861.

### CHATTEL MORTGAGE.—FILING.—EXECUTION.

The provisions of the statutes relative to the filing of chattel mortgages (3 *Rev. Stat.*, 222, 5 ed.) do not apply to assignments of chattel mortgages. The latter are not required to be filed.

Neither chattel mortgages nor assignments are required, by that statute, to be filed as against an execution-creditor of the mortgagee.

Although a mortagor, after the mortgage had been assigned by the mortagee to a third party, as security for a debt due from the mortgagee to such third party, conveys, without the knowledge or consent of such third party, by bill of sale, the mortgaged property to the mortgagee, which bill of sale is put on record by the mortgagee, and the assignment is not upon record, yet the mortgage, in point of law, is not cancelled by the giving the bill of sale against the assignee of the mortgagee.

A purchaser at an execution-sale of the property mortgaged, under an execution against the mortgagee, the judgment obtained and execution issued after the giving and recording of the bill of sale by the mortgagor to the mortgagee, will acquire no title to the property mortgaged and so sold, as against the vendee of the assignee of the mortgagee, on a sale made in foreclosure of the mortgage assigned.

The only title the mortgagee acquires in the property mortgaged, by a conveyance by the mortgagor to him after the mortgagee had previously assigned the mortgage to a third person, is a mere equity of redemption, which is not the subject of levy and sale under execution, unless it be united with the right of possession for a definite period.

Appeal from a judgment of the general term of the Marine Court, affirming a judgment of Mr. Justice Maynard at trial-term.

The facts appear in the opinion.

*D. McMahon,* for appellant.

*J. Palmer,* for respondents.

BY THE COURT.—HILTON, J.—At the trial of this action, the following facts were established:

On June 18, 1857, Andrew McNally, being the owner of the sloop President, to secure the payment of his note for $650, due November 1, 1858, payable to and then held by Simeon Atkins, executed and delivered to him a mortgage upon the vessel. On May 22, 1858, Atkins, being indebted to John C. Baxter upon a promissory note for $140, due November 25, 1858, executed and delivered to Baxter, as security for the payment of the note, an assignment of the mortgage. Neither the mortgage nor the assignment were filed in the register's office of the city and county of New York, but the mortgage was duly recorded at the custom-house, in New York, on the day of its date.

On August 31, 1858, the note for $650 being then outstanding, McNally, for the purpose of paying it, executed and delivered to Atkins a bill of sale of the sloop, which, on March 18, 1859, was also recorded at the custom-house. The note, however, was never delivered up to McNally, nor does it appear that Baxter ever assented to or had any knowledge of this transaction. Atkins took possession of the sloop under the bill of sale, and so remained, up to the time when she was sold, under an execution, in the manner which will be shown hereafter.

On January 21, 1859, Justice Palmer recovered a judgment against Atkins, in the third district court of this city, for $105.19, and issued an execution therein to Thomas Cushing, one of the city constables, who went with it and levied upon the vessel. At the time of the levy, Atkins told him of the existence of the mortgage so assigned to and held by Baxter; whereupon Cushing went to Baxter to inquire respecting it, and was shown the mortgage and the assignment, and told that Baxter claimed a lien upon the vessel. Subsequently, Cushing informed Mr. McAdam, the attorney for Palmer in the judgment, that Baxter "had some claim." McAdam thereupon called on Baxter to inquire respecting it, and was told that it was upon a mortgage of Atkins, and that his claim was about $140. McAdam swears that Baxter did not say he had an assignment of a mortgage, but that "he had a mortgage from Atkins on that vessel." After this information, McAdam searched the records of the custom-house, and found the mortgage of McNally to Atkins, and also the subsequent bill of sale from McNally to Atkins, there

recorded; without communicating to Baxter the result of his search, he advised his client, the defendant Gilbert, who, in connection with the defendant Snape, was, as I think may be inferred from the case, the real owner of the judgment. so recovered in the name of Palmer, "That the mortgage of McNally had been cancelled by operation of law, by the mortgagee (Atkins) buying the vessel, and that he would be sure of his money." Gilbert, in his testimony at the trial, differed from McAdam somewhat as to this. He said that McAdam told him that Baxter pretended to have a claim against the vessel,—"a mortgage or an assignment of a mortgage." He also testified that he paid the note on which the judgment had been recovered, to Mr. Palmer, for counsel-fees, but there was a balance coming to him (Gilbert) upon it.

Cushing subsequently sold the sloop under the execution, and at the sale it was struck off to one Hamel, for $150.

When the sale took place, or where, does not appear; but the bill of sale to Hamel bears date February 14, 1859. On the same day Hamel, who acted in the purchase merely as the agent of the defendants, also executed to them a bill of sale of the sloop, and under which, it seems, they took possession of her. It may be here remarked that Hamel, when examined at the trial, testified that Baxter told him he claimed, under a mortgage signed by McNally, and given to him (Baxter) before Atkins took the sloop back; that this interview took place between the 6th and 12th of February, after the sale, but before he got the transfer-papers from Cushing. He also adds, that the money he paid for the vessel he got from Gilbert. Having thus shown in detail the proceedings and circumstances under which the defendants claim to have acquired a valid title to the sloop, I will now pass to the adverse claim of the plaintiff.

After the levy had been made out in the fore part of February, 1859, Baxter placed the McNally mortgage in the hands of his attorney, Mr. Ryer, with power to collect it, who, after giving previous public notice of intention to sell the vessel, sold her under the power contained in the mortgage. The sale took place on February 12, 1859, within about twenty feet of the sloop, and she was struck off for the plaintiff, as purchaser, for $175. Baxter then executed to the plaintiff, who is his son, a

proper bill of sale of the vessel, in accordance with the authority vested in him as assignee of the mortgage, and on the 15th of February the plaintiff demanded possession of the sloop from the defendants, and upon their refusal to surrender her, this action was brought to recover her value, which was proven to be $400.

Upon the case thus shown, the justice who tried the cause gave judgment for the defendants with costs, on the ground, as stated by him, " that as against the execution-title, under which the defendants claimed, it should appear that the assignment of the McNally mortgage to the plaintiff was recorded as the law required, or that the defendants knew of its existence before they purchased, to entitle the plaintiff to recover," and this determination has been affirmed by the Marine Court at general term. Upon the argument before us we were not referred to any statute or rule of law requiring assignments of chattel mortgages to be recorded, nor do we know any such. The only provision on the subject of chattel mortgages is to be found in 3 Rev. Stat., 5 ed., 222, which, at section 9, declares that any such instrument not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things mortgaged, shall be absolutely void, as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a copy thereof, be filed, as directed in the succeeding section.

Apply this to the case in hand, the mortgage made by McNally would have been void as to his creditors, because it had not been so filed. But the execution was against Atkins, the mortgagee, and not against McNally, and therefore the statute in this respect is not applicable to the claim the defendants set up. But it is urged that the defendants did not believe that the mortgage existed at the time they purchased, but, on the contrary, were advised, and, it is contended, properly so, that it became merged in the bill of sale from McNally to Atkins ; and the justice having been of opinion that the evidence showed they had no knowledge of the assignment to Baxter, they must be regarded as purchasers in good faith, without notice of the existence of the McNally mortgage.

My first answer to this is, that the opinion of the justice is quite immaterial, as we can only deal with the final determina-

tion of the Marine Court at general term, and they have not furnished us with any reasons for their judgment. If, however, we are to assume that they concurred with the justice who tried the cause, and based their affirmance upon the opinion stated by him, then I have to say that their first proposition is totally unsupported by law, and the second equally unsupported by the proof at the trial respecting the knowledge communicated to the defendants and to their attorney, constable, and agent; the evidence clearly showing that they knew Baxter claimed under the mortgage as assignee. The constable who made the sale did not, when testifying, deny the statement of the witness Francis Baxter, who swore, that when Cushing called on John C. Baxter, immediately after the levy, he was shown the mortgage, with the assignment attached, and that he took it and examined it. Besides, the whole case abundantly shows that the defendant, in purchasing, took the risk of the mortgage having been cancelled "by operation of law," and believing in the opinion of their counsel that it was so. But as they were mistaken, they must suffer the consequences, and should not complain when called upon to pay to the rightful owner the value of the property they deprived him of, in the hope that they had acquired a valid title to it. After Atkins assigned the mortgage of McNally to Baxter, he possessed no control over it; and under the circumstances shown as attending the transfer of the vessel to Atkins, McNally even, who had, for aught that appears, no notice of the assignment, would not have been exonerated from liability on his $650 note to the extent to which Baxter held the assignment as security; for at the time of the transaction between McNally and Atkins, the mortgage and note were not produced or attempted to be cancelled, and this circumstance alone was sufficiently suspicious to put McNally upon inquiry as to their whereabouts; and if, without inquiring, he settled with Atkins, he did so at his peril. Brown *a.* Blydenburgh (3 *Seld.*, 141) was a case very similar to this, where a bond and mortgage had been transferred by the mortgagee as security for a loan. The mortgagor, without knowledge of the transfer, paid to the mortgagee the amount of the mortgage, who thereupon executed a discharge, but without producing the bond and mortgage. It was there held that the non-production was such a suspicious circumstance as was

sufficient to put the mortgagor upon inquiry, and unexplained, to make him chargeable with knowledge of the fraud, and render him still liable on his bond.

But the final and conclusive answer to the defendants' claim, is, that they could not acquire, under the sale by the constable upon the execution against Atkins, any legal title whatever to the vessel. The McNally note, or at least to the extent to which Baxter held it as security, had become due and was unpaid. The condition of the mortgage which accompanied it was, that it should be paid at maturity, and upon non-payment, became operative as a valid transfer of the legal title of the vessel to Baxter; and thereafter nothing short of a voluntary waiver or surrender by him could revest such title in the mortgagor or those claiming under him subsequent to the mortgage. A tender of the amount due Baxter would not even have divested him of the title; and, at the time of the sale to the defendants, the only interest Atkins had in the vessel was a mere equity of redemption (Charter *a.* Stevens, 3 *Den.*, 33; Burdick *a.* McKenna, 2 *Ib.*, 170; Otis *a.* Wood, 3 *Wend.*, 498; Patchin *a.* Parce, 12 *Ib.*, 61; Thomas *a.* Gregory, 20 *Wend.*, 17; Hill *a.* Beebe, 3 *Kern.*, 556; Butler *a.* Miller, 1 *Comst.*, 500),— a chose in action only, not the subject of levy and sale upon execution, unless united with the right of possession for a definite period. (Marsh *a.* Lawrence, 4 *Cow.*, 467; Bailey *a.* Benton, 8 *Wend.*, 347; Mattison *a.* Bacus, 1 *Comst.*, 295.) Here, no such right of possession existed, and the title became absolute under the mortgage, subject only to be defeated by the performance of its condition. I think the plaintiff established a clear and indisputable right to recover of the defendants the value of the vessel, and the judgment of the Marine Court to the contrary was therefore erroneous.

Judgment reversed with costs.