## BROWN *vs.* RICH and HUNTER.

Where one bids off, at a sheriff's sale on execution, property of the judgment debtor, embraced in a chattel mortgage previously executed by such debtor—the sale being subject to such mortgage—and subsequently purchases and takes an assignment of the mortgage, this will not operate as a payment or satisfaction of the mortgage. And if the mortgage has not been paid or foreclosed, nor any power contained in it exercised, at the time of its transfer, it will be a valid, subsisting, unsatisfied mortgage; and no fraud can be imputed to the assignee, in representing and claiming that it is unpaid.

The purchaser, in such a case, can either pay off the chattel mortgage, and thus protect his purchase under the execution, or purchase it and take an assignment, and protect himself in that manner.

If he pays off the mortgage, it will be extinguished, and cannot be enforced against any other property contained in it. If he does not pay it, but takes it by purchase and assignment, it is an operative and valid instrument in his hands.

Where R. and H. asserted a claim to B.'s horse, under a chattel mortgage, which claim B. at first disputed, but after investigating the subject, concluded to compromise the claim by buying the mortgage and giving his note for the amount agreed upon, which he voluntarily paid, at maturity; *Held* that even if it had turned out that the mortgage was not, at the time, a valid subsisting mortgage, B. would have had no right of action to recover back the money paid upon his note.

APPEAL from a judgment of the Cayuga county court affirming the judgment of a justice of the peace. The complaint alleged that the defendants procured the note of the plaintiff for $65, by false and fraudulent pretenses, and then sold it to a *bona fide* purchaser, whereby the plaintiff was compelled to pay it. The answer was a general denial. The proof shows the following facts: On the 1st of March, 1859, Luther Barnes executed a chattel mortgage to J. Sprague Morely, assignee of James Hickok, for $167.17, upon a *pair of bay horses*, and other property. Upon this mortgage, S. Dudley paid $70, June 11, 1859. The property was all released except the horses. In April, 1859, the plaintiff traded with Barnes, and got one of the horses, not knowing of the mortgage, and it was agreed between Barnes and the mortgagee, that the horse which Barnes got of the plaintiff, should be substituted for the horse he let the plaintiff have, in the mortgage. In July, 1859, the horses, that is to say the horse got by Barnes of the plaintiff and the other horse originally mortgaged, were sold at sheriff sale, upon an execution against Barnes, *subject to the mortgage*, upon which there was then due, after crediting the $70 paid by Dudley, about $103. The horses were bid off by defendant for $70 to $80. They were worth $250. Soon after the sale, Rich, one of the defendants, went to the owner of the mortgage, and offered to pay the amount remaining unpaid, and demanded an assignment. He asked for an assignment, *under the pretense,* that as he had to pay all the money, he wanted the mortgage to *keep an account with Hunter*. The money was then paid and the mortgage was assigned to the defendants. And on the same day the defendants called on the plaintiff with Allen, the deputy sheriff, with a copy of the mortgage, and demanded the horse the plaintiff had bought of Barnes, upon the mortgage. Plaintiff thought the mortgage was paid by the sale of the other horse, which the defendants denied; and finally, to save his horse, and under the false representation of the defendants, that the

mortgage had not been thus paid, the plaintiff gave them his note for $65, payable in one year, with interest, and took an assignment of the mortgage. Afterwards the plaintiff received a heifer, at $25, upon the mortgage. The note was paid in full. And this action was brought to recover back the amount, upon the ground that the note was obtained by fraudulent and false pretenses. The justice rendered a judgment in favor of the plaintiff, for $51.14 damages and costs, which was affirmed by the county court, on appeal.

*Cox & Avery,* for the appellants.

*Wright & Pomeroy,* for the respondent.

*By the Court,* JOHNSON, J. The facts in this case are quite peculiar. The action is brought to recover back money paid by the plaintiff to the defendants, upon a promissory note given by him to them upon the sale and assignment of a chattel mortgage by the latter to the former. The note was given for $65, payable one year from its date with interest, and was paid and taken up when it became due. The complaint alleges that the defendants procured the note of the plaintiff by certain false and fraudulent pretenses, without specifying what they were.

From the evidence upon the trial, however, it appears that the fraudulent pretenses were claimed to consist in the allegation and claim of the defendants, that the mortgage which was assigned by them to the plaintiff, and for which the note was given, was a valid subsisting mortgage at the time, whereas, as the plaintiff now claims, it had before that time been paid and extinguished. The defendants, at the time they assigned the mortgage to the plaintiff, were the assignees of it from the mortgagee. At the time it was assigned to them there was due upon it to the mortgagee $101.68. This amount the defendants paid to the mortgagee, and took his assignment. There seems to be no dispute that this amount was

due on the mortgage, to the mortgagee, at the time he assigned it. But it is claimed to have become satisfied and extinguished the moment it came to the defendants' hands, for the reason that they had previously bid off at a sheriff's sale certain property of the mortgagor, which was sold on an execution against him and which was contained in the mortgage, subject to such mortgage. It is difficult to see how in any legal point of view this could operate as a payment or satisfaction of the mortgage. What the defendants bought at the sheriff's sale, was the mortgagor's right of redemption of the property from the mortgage, and nothing more. This right was sold not upon the mortgage but upon another claim, to wit, a judgment and execution in favor of parties in no respect connected with the mortgage. The mortgage then remained wholly unaffected by this sale. What the defendants obtained by the purchase in this way was the right, if they saw proper to exercise it, of paying off the mortgage at any time before its foreclosure under the power of sale, by the mortgagee. They could either pay it off, and protect their purchase under the execution in that way, or purchase it and take an assignment and protect it in that manner. If they had paid it off, it would have been clearly extinguished, and could not have been enforced against any other property contained in it. But as they did not pay it off, but took it by purchase and assignment, I do not see why in their hands it was not an operative instrument. At the time of the sheriff's sale the mortgage was over due and the right and title of the mortgagee to all the property covered by it, had become absolute. in law. He had then the right to take all the property into his custody, and keep it absolutely, without being accountable to the mortgagee or any one else for its value, or any part thereof. This was his right as absolute owner of the legal title which had been transferred to him by the mortgage. But at any time before exercising the power in the mortgage and foreclosing by sale the right of the mortgagor, the latter had in equity the

right of paying off the debt, and thus extinguishing the mortgagee's title, and reinvesting himself with it.    But the mortgage has never been foreclosed, nor has it been paid off, but on the contrary was kept on foot by purchase and assignment.    Had the sale, under which the defendants purchased, been under the mortgage instead of an execution, and the property been bid off at a sum equal to the amount due thereon, that would have satisfied and extinguished the mortgage, as to all other property covered by it, as was held in *Charter* v. *Stevens*, (3 *Denio*, 33.)    But here the power in the mortgage had never been exercised nor had the mortgage debt been paid, and I do not see why it did not exist in the hands of the defendants perfectly valid and intact.

Certainly they were in no worse situation, after taking the assignment, than the mortgagee would have been had he made the same purchase at the sheriff's sale.    Suppose the mortgagee at that sale had been the purchaser instead of the defendants, subject to his own mortgage, would that have satisfied and extinguished it as respects the other property contained in it ?    It seems to me not.    Because his legal title was then absolute as to all the property, and buying in the equity of redemption of a portion only, could not upon any legal principle, so far as I 'can see, extinguish such legal title to the other property.    It certainly could not, unless such purchase at the sale under the execution can be regarded in law as the foreclosure of the mortgage ; and not then even, unless we can go further and hold that the actual value of the property so purchased, over and above the amount bid for the right of redemption, is equal to the amount due upon the mortgage and is legally applicable as a payment on the mortgage to that amount.    This, I think, no one is prepared to assert.    It cannot be seen or known what the mortgaged property bid in at the sheriff's sale would have brought had it been sold on the mortgage.    I conclude, therefore, that inasmuch as the mortgage had never been paid nor foreclosed, nor any power contained in it ever been exercised at the time

of its transfer to the plaintiff, it was at that time a valid subsisting unsatisfied mortgage, and that no fraud was or could have been practiced by the defendants in representing and claiming that it was unpaid. It is unnecessary in this action to determine the extent to which it might have been enforced in the defendants' hands, against the property covered by it, which the plaintiff had in equity. It is enough for this action that it was not extinguished as respects the other property which it covered. This disposes of the case upon the merits, and shows conclusively that the judgment is entirely erroneous.

There are other grounds upon which, as it seems to me, the right of action must fail, even should it be held that the mortgage was in law satisfied. The defendants asserted their claim to the plaintiff's horse, under the mortgage, which claim the plaintiff at first disputed, but after investigating the whole matter concluded to compromise the claim by buying the mortgage and giving his note for the amount agreed upon, payable in one year, which he voluntarily paid to the defendants when it became due. If it had turned out that the mortgage was not at the time a valid subsisting mortgage but had by operation of law been extinguished, by reason of the purchase at the sheriff's sale, I do not see what right of action the plaintiff could now have to recover back this money. In that view it was a mere mistake in matter of law. There is no evidence to show that the defendants did not honestly suppose and believe that the mortgage was good as against the property which the plaintiff held, that was contained in the mortgage. The plaintiff acquainted himself with all the facts, compromised the claim and paid it voluntarily to the defendants at the end of the year. Clearly he could have no right of action upon that state of facts. The right of action here is not at all affected by the fact that the sheriff sold two horses subject to the mortgage, when in fact the mortgage covered only one of them. The plaintiff acquired no rights by that mistake of the sheriff,

as he was no party to the transaction.   He might have pro-
tected.himself by attending and bidding at the sale, but he
cannot compel the defendants to account in this way for the
property they saw fit to purchase at such sale.   The defend-
ants ˙never agreed to pay the mortgage.   They only pur-
chased subject to it, as clearly appears by the evidence of the
deputy sheriff who made the sale.   He had nothing to do
with the mortgage, and only undertook to sell the interest
of the mortgagor in the property.   He represented the rights
of the other creditors of the mortgagor and was an entire
stranger to the interests of the mortgagee.

There is therefore no foundation for the action, in any
point of view, and the judgment of the county court and of
the justice must be reversed.

[MONROE GENERAL TERM, June 2, 1863. *E. Darwin Smith, Welles* and
*Johnson,* Justices.]