Mathews v. Smith & Crittenden.

JAMES MATHEWS, TOOTLE & MAULE AND W. V. MORSE & CO., PLAINTIFFS IN ERROR, V. SMITH & CRITTENDEN AND KELLOGG & BARRETT, DEFENDANTS IN ERROR.

1.  Garnishment. The Code provides for service of notice of garnishment upon two classes, viz., persons and corporations. If served on a person, it must be served upon him personally or by leaving a copy at his usual place of residence; if upon a corporation, then upon its president, etc., or managing agent.

2. ———: NOTICE. Certain goods were taken possession of by a non-resident firm under a chattel mortgage, and while in possession of an agent notice of garnishment was served upon him by name. *Held*, That the notice was sufficient, and that the attachment created a trust in the property in his possession, and that notice to the agent of the trust was notice to the principal.

ERROR to the district court for Polk county. The facts appear in the report of the referee set forth in opinion.

*E. Wakeley* and *Groff & Montgomery*, for plaintiffs in error.

The mortgage to Smith & Crittenden was invalid on its face because it provided that the goods should be sold at "private sale without notice, as required by the General Statutes of Nebraska." The statute (Comp. Stat., 82, Gen. Stat., 481), is mandatory. *Hurford v. Omaha*, 4 Neb., 350. If not invalid on its face it was fraudulent as to creditors. Consider Crittenden's promise; consider large difference between the debt ($1,800) and the value of the goods ($6,000); consider terms of note and mortgage, note payable "on demand without grace," mortgage providing for "private sale." Herman on Chattel Mortgages, 249, 257, 258. The attachments were legally levied. Code, secs. 201, 205, 209, 929, 931. *Davidson v. Kuhn*, 1 Disney, 405, 410. On question of garnishment see Comp. Stat., 535. *Rutledge v. Corbin*, 10 Ohio State, 478. *Morgan & Co. v. Spangler*, 20 Ohio State, 38. *Armstrong v. McAlpin*, 18 Ohio State, 184. *Faulkner v. Meyers*, 6 Neb., 418. Bliss on Code Pleading, sec. 383.

*F. B. Hart*, for Smith & Crittenden, defendants in error.

The power in the mortgage was to sell at "private sale" or at public auction. The mortgagor had a right to contract with reference to the mode of foreclosure. Herman

on Chattel Mortgages, secs. 206, 209, 211. 2 Jones on Mortgages, sec. 1778. Mortgage was valid, mortgagees were in possession and mortgagor had no property therein subject to levy or sale. *Campbell v. Leonard,* 11 Iowa, 489. *Gordon v. Hardin,* 33 Iowa, 550. The garnishee process was invalid.

*Norval Brothers,* for Kellogg & Barrett, defendants in error.

Priority of attachments and garnishments cannot be determined in this action of replevin. Sole question is as to S. & C.'s right to goods, etc. Property was not subject to attachment. Drake on Attachment, secs. 267, 269, 538, 539. *Badlam v. Tucker,* 1 Pick., 389. *Doane v. Garretson,* 24 Iowa, 351. Kellogg & Barrett, having garnisheed after all the property was converted into money, have the first lien on the surplus. Drake on Attachment, sec. 667. *Williams v. A. & K. R. R.,* 36 Me., 201.

MAXWELL, J.

This case was referred to a referee, who found as follows:

*First.* That on the twenty-third of December, 1878, the firm of Beaty & Woods engaged in the business of general merchandise at Osceola, Polk county, Nebraska, were indebted to the plaintiffs in the sum of $1852.29, and on the same day, to secure the payment of the same, executed and delivered to plaintiffs a note and chattel mortgage for the sum of $1776.29, which chattel mortgage was upon a stock of goods of general merchandise of the value of $4500.00. That the sum of $76.00 then due plaintiffs from said Beaty & Woods was omitted from the amount of said note and mortgage by mistake.

*Second.* That in the taking of said mortgage plaintiffs acted in good faith and for the sole and only purpose of securing the payment of the debt due them.

*Third.* That said chattel mortgage was on the twenty-third of December, 1878, filed and indexed in the office of the county clerk of said Polk county.

*Fourth.* That said chattel mortgage provided that said sum of $1776.29 should be paid on demand without grace.

*Fifth.* That said mortgage provides that in case of default in the payment of said money thereby secured said mortgagee could take immediate possession thereof and sell the same at private sale without notice.

*Sixth.* That said mortgage provided upon a sale of the property the proceeds should be applied to pay the amount due, or to become due, with all reasonable costs pertaining to the taking, keeping, advertising, and selling of said property.

(The *seventh* relates to the form of the chattel mortgage.)

*Eighth.* That on the same day that said mortgage was executed and delivered to plaintiffs, the plaintiffs made a demand for and took possession of the property mentioned in said mortgage, under the promises of said mortgage, Beaty & Woods consenting to such possession.

*Ninth.* That upon taking possession of said property, plaintiffs commenced to sell the same at private sale, and continued to sell at private sale until after the same was taken in attachment by defendant, James Mathews. (The aggregate of such sales is $898.77).

*Tenth.* That after plaintiffs obtained possession of said goods under the writ of replevin in this action they advertised and sold at public sale, under the provisions of the statute relative to the sale of property under chattel mortgage, for the sum of $2000.

*Eleventh.* That plaintiffs received from the total sales of said goods the sum of $2898.77.

*Twelfth.* That plaintiffs paid as costs and expenses incurred in taking, keeping, and selling said goods the sum of $434.

*Thirteenth.* That plaintiffs paid as attorney's fees for foreclosing said mortgage the sum of $175.

*Fourteenth.* That the defendant, James Mathews, as constable, levied upon, in the possession of mortgagees, and took and held possession of said property, under and by virtue of valid writs of attachment issued out of a justice court for said Polk county, on the seventh day of January, 1879, in favor of each of the defendants, Samuel Burns and Max Meyer & Co.

*Fifteenth.* That on the eighth day of January, 1879, at 11 o'clock A.M., the sheriff of said Polk county received valid writs of attachment in each of the following suits: W. V. Morse & Co. against Beaty & Woods; Tootle & Maule against Beaty & Woods; John O. Farwell & Co. against Beaty & Woods; A. M. Shasta & Co. against Beaty & Woods; and on the same day at the hour of 3 o'clock P.M., said sheriff, in the presence of two credible persons, did declare that he did levy said attachments upon the goods in question, the same being in the custody and control of said James Mathews as constable, by virtue of the writs of attachment in the suits of Samuel Burns and Max Meyer & Co., but said sheriff did not take possession of said goods, or appraise the same or obtain the custody and control thereof.

*Sixteenth.* That on the sixteenth day of January, 1879, one of the attorneys for Tootle and Maule in the suit against Beatty & Woods filed an affidavit in said action in due form of law, alleging "that he has good reason to believe and does believe that Clarence H. Buell has property, moneys, and credits in his possession belonging to said defendants, J. M. Beaty and Joseph Woods, and he further makes oath and says, that as he is informed and believes that the said Clarence H. Buell, as agent for the firm of Smith & Crittenden, of Council Bluffs, Iowa, has property, money, and credits in his possession, as such agent, belonging to said defendants, J. N. Beaty and Joseph Woods, and

further makes oath and says that he is informed and believes Smith & Crittenden, a firm doing business at the city of Council Bluffs, Iowa, have property, moneys, and credits in their possession at the town of Osceola, Neb., belonging to said defendants, Beaty and Woods." And on said sixteenth day of January, 1879, due notices of garnishment were issued in said action, one directed to Clarence H. Buell, agent for Smith & Crittenden, requiring him to appear and answer, etc.; and on the seventeenth day of January, 1879, at the hour of 10 o'clock A.M. said notices were, by the sheriff of said Polk county, duly and legally served upon said Clarence H. Buell and Clarence H. Buell, agent for Smith & Crittenden, but no notice of garnishment was issued or directed to said Smith & Crittenden.

*Seventeenth.* That on the sixteenth day of January, 1879, one of the attorneys for W. V. Morse in said suit against Beaty and Woods filed an affidavit in said cause alleging the same facts as stated in the sixteenth finding. Notices were issued the same as stated in the sixteenth finding, and were served at the same time and in the same manner as stated in the sixteenth finding.

*Eighteenth.* That on the thirteenth day of March, 1879, the attorney for A. N. Shasta & Co., in the case against Beaty & Woods, filed an affidavit in said cause in due form of law, alleging "that he has good reason to, and does believe, that one Hart, whose first or christian name is unkown, and C. H. Buell have goods, rights, chattels, moneys, etc., in their hands or under their control belonging to said defendants, and liable to be applied to the payment of plaintiff's claim; that on said thirteenth day of March, 1879, notices of garnishment in due form of law were issued, notifying said Hart and C. H. Buell to appear and answer, etc., and were, on the thirteenth day of March, 1879, at 3 o'clock P.M., duly and legally served by the sheriff of said county upon said Hart and C. H. Buell.

*Nineteenth.* That no notice of garnishment was issued or served in either of said actions directed to plaintiffs Smith and Crittenden.

*Twentieth.* That on the fourth day of February, 1879, W. F. Kellogg and Alvin W. Barrett, partners under the name of Kellogg and Barrett, secured a judgment against said Beaty & Woods in the county court of Polk county, Nebraska, for the sum of $398.73 debt, and $5.75 costs; that on the thirteenth day of March, 1879, at 8 o'clock A.M., a transcript of said judgment was filed in the office of clerk of district court of said Polk county, Nebraska; that on the same day, to-wit, March 13th, 1879, an execution was duly issued on said judgment out of said district court and placed in the hands of the sheriff of said county, who on the same returned the same unsatisfied for want of property of said defendants whereon to levy.

*Twenty-first.* That on the thirteenth day of March, 1879, one of the attorneys for Kellogg & Barrett filed an affidavit in said cause in the clerk's office of said district court in due form of law, alleging "That execution in said cause has been issued and returned unsatisfied for want of sufficient property whereon to levy and collect the same. Affiant further deposes and saith that he has good reason to and does believe that Hart and Smith & Crittenden have property of and are indebted to the said Beaty and Woods, partners as Beaty & Woods, the judgment debtors in said cause."

*Twenty-second.* That on the thirteenth day of March, 1879, a notice of garnishment in due form of law was duly issued, notifying Frank B. Hart and Smith & Crittenden to appear and answer, etc., service of said notices of garnishment was on the same day accepted in writing by said F. B. Hart and Smith & Crittenden, by F. B. Hart, their attorney.

*Twenty-third.* That said Clarence H. Buell, at the time said garnishment proceedings were commenced and served

upon him, was the agent of Smith & Crittenden, mortgagees, and as such had possession of the goods mortgaged remaining unsold, and had the proceeds of the goods at that time sold.

*Twenty-fourth.* That said F. B. Hart was, at the time said garnishment proceedings were commenced and served upon him, the attorney for Smith & Crittenden, and as such had the possession of the proceeds of the goods sold at public sale, to-wit, $2000 on the day of sale.

*Twenty-fifth.* That at the time of the commencement of this action plaintiffs were owners as mortgagees of the property in question, and entitled to the immediate possession of the sales.

*Twenty-sixth.* That Samuel Burns secured a judgment in his said action against Beaty & Woods on the seventeenth day of January, 1879, for $77.29 debt, and $20 costs, and that there is due thereon at this date $114.03.

*Twenty-seventh.* That Max Meyer & Co. recovered a judgment against Beaty & Woods on the nineteenth day of January, 1879, for $43.50 debt, and $28 costs, and that there is due thereon at this date the sum of $80.95.

*Twenty-eighth.* That W. V. Morse & Co. recovered a judgment in their said action against Beaty & Woods on the fourth day of June, 1879, for $373.36 debt, and $37 attorney's fees and $... costs, and there is due thereon at this date the sum of $...

*Twenty-ninth.* That Tootle & Maule secured a judgment in their said action against Beaty & Woods on the fourth day of June, 1879, for $885.42 debt, and $73 attorney's fees, and $... costs, and there is due thereon at this date the sum of $......

*Thirtieth.* That A. M. Shasta & Co. recovered a judgment in their said action against Beaty & Woods on the ......... day of ........., 1879, for $1547.21 debt, $100 attorney's fees, and $8.80 costs, and there is due thereon at this date the sum of ......

*Thirty-first.* That John V. Farwell & Co. secured a judgment in their said action against Beaty & Woods on the ......... day of ........., 1879, for $130.70 debt, and $6.75 costs, and there is due thereon at this date the sum of $......

*Thirty-second.* That there is due Kellogg & Barrett upon their said judgment at this date the sum of $484.20.

As conclusions of law the referee found:

*First.* That the chattel mortgage in question from Beaty & Woods to Smith & Crittenden, the plaintiffs, is valid.

*Second.* That Samuel Burns and Max Meyer & Co. did not obtain a lien to said property, or the proceeds thereof, by virtue of the levy of their attachment.

*Third.* That W. V. Morse & Co., Tootle & Maule, John V. Farwell & Co., and A. M. Shasta & Co. did not obtain a lien upon said property by virtue of the attachment issued in their action.

*Fourth.* That at the time of the issue of the attachments in the actions of W. V. Morse & Co., Tootle & Maule, John V. Farwell & Co., and A. M. Shasta & Co., and the service of said attachments by the sheriff, the property was in the custody of the law, and the sheriff could make no valid levy of said attachments.

*Fifth.* That the garnishee proceedings in the cases of Tootle & Maule, W. V. Morse & Co., A. M. Shasta & Co. were ineffectual to give them any interest in or to the property in question or the proceeds thereof.

*Sixth.* That the garnishee proceedings in the case of Kellogg & Barrett were sufficient to entitle them to the proceeds of said property, after the payment of prior liens.

*Seventh.* That the plaintiffs are not entitled to deduct from the proceeds of the sale of said property the sum of $75 paid as attorney's fees, as the same are not a part of the costs provided for in said mortgage.

*Eighth.* That plaintiffs are not entitled to deduct from

the proceeds of said property the sum of $76 due them from said Beaty & Woods, and omitted from the amount of said note and mortgage by mistake, as against valid attachment liens.

*Ninth.* That plaintiffs are entitled to deduct from the proceeds of said property the sum of $76 due them from Beaty & Woods, and omitted from the amount of said note and mortgage by mistake, as against the garnishee proceedings.

*Tenth.* That plaintiffs are entitled to a judgment, that they are the owners of the property in question, and were at the time of the commencement of this action entitled to the immediate possession of the same, and that the same was wrongfully held by defendant Mathews.

*Eleventh.* That plaintiffs are entitled to deduct from the proceeds of the sale of said property the debt secured by said mortgage, to-wit: $1776.29 and the cost of taking, keeping, advertising, and selling of said property, to-wit, $434.

*Twelfth.* That the balance of the proceeds of the sale of said goods should be applied in this action as follows:

1.  In paying of the sum of $76 due plaintiffs from Beaty & Woods, and not included in the amount of said note and mortgage.

2.  In payment of the amount due Kellogg & Barrett upon their judgment against Beaty & Woods, to-wit, $484.20.

3.  That the defendants, W. V. Morse & Co., Tootle & Maule, John V. Farwell & Co., A. M. Shasta & Co., Samuel Burns, and Max Meyer & Co., are not entitled to relief in this action.

Exceptions were filed which were overruled, and judgment entered on the report. The cause is brought into this court by petition in error. The principal question to be determined is the validity of the proceedings in garnishment.

Sec. 207 of the code provides that: "When the plaintiff, his agent or attorney, shall make oath, in writing, that he has good reason to·and does believe that any person or corporation, to be named and within the county where the action is brought, has property of the defendant (describing the same) in his possession, if the officer can not come at such property, he shall leave with such garnishee a copy of the order of attachment, with a written notice that he appear in court at the return of the order of attachment, and answer as provided in sec. 221."

· Sec. 208 provides that: "The copy of the order and the notice shall be served upon the garnishee as follows: If he be a person, they shall be served upon him personally, or left at his usual place of residence; if a corporation, they shall be left with the president or other officer of·the same, or a managing agent thereof."

Bouvier defines the word "garnishment" to be "A warning to any one for his appearance in a cause in which he is not a party, for the information·of the court and explaining a cause." 1 Bouv. Law Dict., 627. In other words, it is notice to·the party in actual possession of the goods or choses in action of a debtor that an attachment has been issued against the debtor, and that the debtor's property in the hands of the party receiving the notice is to be held subject to the attachment.

The word "garnishment" appears to be used in all the states except those of New England, where the party warned is called a trustee, and the process under which he is notified a trustee process.

The Revised Statutes of Massachusetts of 1836, part 3, tit. 4, chap. 109, contains a provision that: "Every person having goods, effects, or credits of the defendant intrusted to or deposited in his possession, may be summoned as a trustee, and the property in his hands attached and held to respond to the final judgment," etc.

In Vermont the trustee process is given to creditors against

persons having in their possession money, goods, chattels, rights, or credits of concealed or absconding debtors, or debtors residing out of the state, or removed out of the state, leaving effects within it. Under this statute it was held that a non-resident of the state coming within it for a temporary purpose, is not liable to be summoned as a trustee. *Baxter v. Vincent,* 6 Vt., 614. The same decision seems to have been made in Massachusetts. See *Ray v. Underwood,* 3 Pickering, 302. And this was the custom of London. See cases cited in note 3, sec. 473 of Drake on Attachment. Under our statute proceedings in garnishment are not an action that may proceed to judgment and execution be issued thereon. They are in the nature of notice to the party in actual possession of the property of the attachment, and from the time he receives such notice he becomes in respect to the goods or property of the debtor a trustee.

In *Corey v. Powers,* 18 Vt., 588, it is said: "It is not necessary to constitute the relation of debtor and trustee that a right of action should actually exist and be perfected in the debtor at the commencement of the trustee process. It is sufficient if property is deposited with the trustee, or that he is indebted to the principal debtor, though something further may be required to constitute a right of action thereof."

In *Quigg v. Kittredge,* 18 N. H., 137, it is said: "So bailees are not answerable in many cases until there has been a demand. So administrators of insolvent estates cannot be charged until demand after a dividend has been declared, nor administrators generally for the share of an heir. But they may be charged as trustees although there has been no demand. The reason is that the process of foreign garnishment is not regarded as an adverse suit as against the trustee. Instead of being subjected to costs he recovers costs and these are regarded as an indemnity." And the same rules are applicable under our statute.

From the time of garnishment the effects in the garnishee's possession are considered *in custodia legis*. *Brashear v. West*, 7 Peters, 608, *Mattingly v. Boyd*, 20 Howard, 128, *Biggs v. Kouns*, 7 Dana, 405. The goods are thereafter subject to the lien of the creditor who effected the garnishment. *Burlingame v. Bell*, 16 Mass., 318. *Swett v. Brown*, 5 Pick., 178. And if the goods are taken even by a wrong-doer after the service of notice the liability of the garnishee continues. *Parker v. Kinsman*, 8 Mass., 486, *Despatch Line v. Bellamy Man. Co.*, 12 N. H., 206. Drake on Attachment, sec. 453.

If the goods can be levied upon the officer takes possession of the same, but if he "cannot come at such property," then he is to leave with the garnishee a copy of the order of attachment with a written notice to appear in court and answer under oath all questions touching the property of every description and credits of the defendant in his possession or under his control. Now who is a person to be garnisheed? The statute provides for the service of notice on only two classes, viz., persons and corporations. If a person, the notice is to be served upon him personally or left at his usual place of residence, and if a corporation then with the president or other officer, or managing agent of the same. There is no provision whatever for obtaining service upon a firm not doing business in the county, much less a non-resident of the state. The design of the law is to reach the property, and if from any cause the officer cannot levy upon that, the person in actual possession of the same may be required to appear and show the facts in relation to the ownership. If he fails to obey, an attachment may be issued against him as for contempt. The court by its process may compel the party served with notice to disclose all the facts within his knowledge. But what power would it have over a firm residing out of the state? Suppose the notice in this case had been directed to Smith & Crittenden, and had been served upon Buell & Hart, and no

one had appeared in response to the same, against whom would an attachment issue? It could not issue against Smith & Crittenden unless they were personally served and were within the jurisdiction of the court, nor could it issue against any of their employees, because they were not required to appear. Consequently the court would be powerless to protect the rights of parties asking its aid. Besides Smith & Crittenden, being a non-resident firm and having no place of business in the state, but merely selling certain goods which they held a lien upon, were liable at any moment to have their claim satisfied and leave the state. They could therefore at any moment defeat the proceedings in garnishment if the notice must be served upon them. But this not being an action, notice to the agent is notice to the principal. The property or chose in action becomes a trust fund for the satisfaction of any judgment that may be recovered, and the agent is charged with notice of the trust.

Story says: "Notice of facts to an agent is constructive notice thereof to the principal himself, where it arises the from or is at the time connected with the subject matter of agency." Story on Agency, sec. 140.

And it has been held that in a commercial transaction, if the purchaser's agent on behalf of the principal buy goods from a factor, and such agent has notice, no matter by what means, that the goods are not the goods of the factor, the knowledge of the agent will be held to be the knowledge of the principal. *Dresser v. Norwood,* 17 C. B., N. S., 466.

And in the case of *Hart v. The F. & M. Bank,* 33 Vt., 252, the same rule was extended to the knowledge of a trust acquired by the agent before his employment to levy upon the goods as the property of the trustee. Story on Agency, sec. 140 *a.* But we find it unnecessary to go to this extent. Here was a trust created in favor of other creditors, of which this agent not only had notice, but was

required to make a full and complete disclosure as to his claim and the character in which he holds the property. We have no doubt the service of notice of garnishment upon Buell was sufficient, and that the plaintiff's attachments date from that time. The property or the proceeds thereof are before the court, and it is its duty to make a distribution of the same to the several creditors in the order of the priority of their liens. Smith & Crittenden had no authority to sell more than sufficient goods to pay their claim. The case is precisely similar to that of *Charter v. Stevens*, 3 Denio, 33. In that case the mortgagee, after the day of payment, sold part of the mortgaged property by virtue of a power of sale in the mortgage for sufficient to pay the mortgage debt and costs, and it was held that the mortgagee's title to the chattels remaining unsold was extinguished. The reason is the mortgage is a mere security for the debt. The mortgagee, although the holder of the legal title, is not the absolute owner of the property, and should be held to strict account for any surplus remaining in his hands. See also *Stromberg v. Lindberg*, 25 Minn., 513.

The testimony as to the value of the property sold at private sale is very unsatisfactory, and the same may be said of the expenses of the sale. As we find the proceedings in garnishment referred to in the 16th, 17th and 18th findings of fact sufficient to bind the property, we deem it better to avoid expressing an opinion upon the validity of the attachments referred to in the 15th, as neither the briefs nor argument of counsel have aided the court in solving the question. It would seem like a play upon words to hold the notice of garnishment served upon Buell an agent was not good, but that notice to Hart, an attorney of Smith & Crittenden, although a non-resident, was good. How far an attorney can enter an appearance for a garnishee is a proper question for discussion in the distribution of the funds, but does not arise in the case, as the lien of Kellogg & Barrett will be postponed until all prior liens are satisfied.

The claim of Smith & Crittenden for $76.00, omitted from the mortgage by mistake, will be postponed until all liens are paid. The judgment of the district court is reversed, and the cause remanded to the district court with directions to modify the findings of the referee in conformity with this opinion, and for further proceedings.

REVERSED AND REMANDED.