Landos, J.
(dissenting)—The testimony of all the parties to the bills of sale beyond any reasonable question that one was given to secure to Southwick the payment of McIntyre’s debt to him, and the other to secure Wells against loss upon his liability as endorser for McIntyre. This testimony is cited in the brief of the counsel for the appellant, the inspection of the case verifies the citations and fails to disclose any evidence in contradiction. The bills of sale were delivered upon the oral understanding that they were such security, and that McIntyre, the debtor, was to continue in possession and dispose of the goods from his store in like manner’ as before the sale, except, however, as agent for Southwick and Wells. All that Southwick and Wells wanted was protection from loss, and the inference is justified that if the proceeds coming to them from the sale of the goods exceeded that amount the surplus was to be accounted for to McIntyre.
Southwick, acting for himself and for Wells, went directly after the interview with McIntyre, in which McIntyre delivered the bills of sale, to the office'of counsel. He returned to McIntyre within an hour after the bills of sale had been delivered, and before they were filed, and presented McIntyre with a paper, which he and McIntyre both signed, and which Southwick never filed, but kept for the benefit of himself and Wells. That paper was as follows: >
“It is hereby agreed by me, James D. McIntyre, that I will pay over to Thomas L. Southwick all moneys realized upon articles sold described in the bills of sale made by me to said Southwick and to George Wells, both dated December 29, to be by said South-wick applied in payment of the sums- mentioned in said bills of sale and due said South-wick and Wells, and I agree to act as their agent in making said sales, and not otherwise. The entire proceeds of such sales to be applied to the reduction of said indebtedness. On the part of Southwick & Wells, we authorize *753 said McIntyre to sell the articles described in the two bills of sale as our agent only, and not otherwise, and on condition that he pay over the proceeds as above, and apply them to the indebtednqss to us.
“Dated December 29, 1883.
“JAMES D. MCINTYRE, “THOMAS L. SOUTHWICK.”
The inference justly deducible from this transaction and the paper is that the oral agreement, contemporaneous with the bill of sale, was in part, at least, reduced to writing, and hence to that extent supercedes the oral arrangement, and forms part of the same transaction as the bills "of sale. The two should be construed together. Haydock v. Coope, 53 N. Y., 69.
This paper conclusively shows that the entire transaction was in the nature of a security. The proceeds of all sales are thereby agreed to be “applied in payment of the sums mentioned in said bills of sale, due said Southwick & Wells.” Nothing could be due them if the goods had been sold to them in satisfaction or in payment of their claims. Nothing more could be applied in payment upon claims already paid. “The entire proceeds to be applied to the reduction of said indebtedness.” This could not be done unless the indebtedness continued. Nor could anymore be applied in reduction of the indebtedness than sufficient to cancel it, and because no more of the proceeds of the sales is appropriated to the benefit of Southwick & Wells than sufficient to cancel the indebtedness, the surplus did not belong to them, and McIntyre continued the owner thereof, or of an equity of redemption therein, and South-wick & Wells’ control over the property would cease with the satisfaction of their claims. Charter v. Stevens, 3 Denio, 33; Cameron v. Irwin, 5 Hill, 272. Both papers together, therefore, constituted a mortgage. Bragelman v. Daue, 69 N. Y., 74; Coe v. Cassidy, 72 id., 137; Leitch v. Hollister, 4 id., 216; Knapp v. McGowan, 96 id., 86; Smith v. Beattie, 31 id., 542.
This is a contest between creditors. Southwick & Wells claim as vendees under their bills of sale. If, however, they are mortgagees and not absolute vendees, they have no title to the goods against the creditors represented by the plaintiff, unless they have taken the statutory steps necessary to validate a mortgage hen against the claims of judgment-creditors. The statute (chapter 279, Laws 1833, § 1), declares that “every mortgage or conveyance intended to operate as a mortgage of, goods and chattels, which shall not be accompanied by an immediate delivery, and be fol *754 lowed by an actual and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, * * * unless the mortgage or a true copy thereof shall be filed,” etc. Southwick & Wells at best only took constructive possession, and left McIntyre in actual possession under the agreement that he should only act as their agent. Such constructive possession is of no force. Actual, open and public possession of the mortgagee to the exclusion of the appearance of control on the part of the mortgagor is required. Hale v. Sweet, 40 N. Y., 101; Steel v. Benham, 84 id., 634; Crandall v. Brown, 18 Hun, 461.
Immediate possession is the imperative requirement of the statute; hence possession taken two months later, and when the receiver’s title had vested, is of no force. Dutcher v. Swartwood, 15 Hun, 31.
Both papers constituted the mortgage and only one was filed. Hence the statute was not in this respect complied with. The statute says “the mortgage ” shall be filed and that means the papers making it, however many of them. Ely v. Carnley, 19 N. Y., 496. If the defendants rest upon the bill of sale and the oral contemporaneous agreement, it is difficult to see how the statute could be complied with, for in that case, one part of the mortgage is written, and the other not.
The bills of sale omitted a material part of the goods in McIntyre’s store, but they were ultimately disposed of, by the defendants in the same manner as if they had been included. The referee, erroneously as we think, allowed Mclntrye to testify that he intended to include everything, but by inadvertance failed to do so. If we are right in our view that the relation created between McIntyre and Southwick & Wells was that of mortgagor and mortgagees, then this intention of McIntyre to put in the things he left out in no way cures the omission. Clearly, as to the goods omitted from the instrument, Southwick & Wells have no shadow of title against the judgment creditors of Southwick, however much they might have against McIntyre. They have not complied with the statute, and, therefore, are not within its protection. Why they omitted any step is an idle inquiry.
The referee decided this case upon the theory that the bills of sale gave to Southwick & Wells a title to the property good against judgment creditors. The appellant urges upon us that if the instruments were bills of sale only they are fraudulent and void against creditors because given and received to enable McIntyre to appropriate a portion of the property to his own support, and to hinder and defeat other creditors.
*755 We have not thought it necessary to examine the case in that aspect. We think the transaction created the relation of mortgagee and mortgagor, and that the mortgage was void against creditors, not because of fraud, but because the statute was not complied with.