## ROYAL E. MATHEWS *vs.* HIRAM H. FISK.

*Conversion. Demand. R. S., c. 91, § 3. Trover.*

Fisk sold Mathews a horse taking his note for a hundred dollars payable in seven months, and a mortgage of the animal conditioned for the payment of twenty-five dollars upon the note in one month, and "the balance to be paid in labor driving logs the present season, if said Mathews' labor shall be sufficient; otherwise in cash according to the tenor of said note;" with a proviso that the horse was to remain in Mathews' possession until default made. At the expiration of thirty days from the date of these papers Fisk demanded payment of the $25 which was refused upon the ground that it was not due, and Fisk took possession of the beast. Mathews testified that he was not aware that the condition of the mortgage changed the tenor of the note and that he did not consent to any such change, and claimed that this taking was a conversion. After taking the horse Fisk disposed of him, and also negotiated the note which the maker paid in full to the indorsee. Fisk having repurchased the horse, the plaintiff after payment of his note demanded the beast of him, to which the defendant replied that it was at the stable of a third person a few rods off and that the plaintiff might take him; but Fisk admitted upon the stand that he had not at the time of demand seen the horse for more than a week and did not know whether or not he was then actually at the stable mentioned or not: *held,* that it was the defendant's duty to know whether or not the horse was at the designated place of delivery, and that a verdict against him should be sustained.

A sale by the mortgagee of personal property mortgaged, before foreclosure, is a conversion of the same for which the mortgagor can maintain an action.

ON EXCEPTIONS.

TROVER for the conversion of plaintiff's horse by the defendant.

April 23, 1873, Mathews bought of Fisk a horse for $125 pay-
ing twenty-five dollars in cash and giving his note on seven months
for the hundred dollars.    At the same time he secured payment of
this note by a mortgage which stipulated that it was "to be paid
as follows : twenty-five dollars to be paid in one month from date
in cash, the balance to be paid in labor driving logs this present
season, if said Mathews' labor shall be sufficient; otherwise in
cash according to the tenor of said note," with an additional
proviso, that the grantor was to continue in possession of the prop-
erty, &c., "until the conditions of this sale are broken."    There
was testimony introduced that the parties made an agreement as to
the mode and times of payment, according with those stated in the
condition of the mortgage ; and the defendant adduced testimony
to the contrary, and swore that he did not know that the tenor
of the note was at all varied by the mortgage and that he never
consented to any change, that clause being fraudulently inserted.

Upon the twenty-fourth day of May 1872, the defendant re-
quested the plaintiff to pay the twenty-five dollars then due.    The
plaintiff refused, denying that anything was due.    The defendant
thereupon took possession of the horse, and about two weeks
after let one Clark have him for forty-five dollars. 'He introduced
testimony tending to show that this sale to Clark was with the
understanding and agreement that in case the plaintiff should wish
to redeem the horse, Clark should let the defendant have him
back for the price paid $45, and there was testimony to the con-
trary.    Clark soon afterwards traded this horse unconditionally
for another, getting some boot, to one Hatch.    In about five months
after the defendant took possession of the horse, he sold the note
and bought the horse back of Hatch for $62.50.    The defendant
introduced testimony tending to prove that after he bought back
the horse and before the plaintiff demanded him, the defendant
requested the plaintiff to appoint a place where he would receive
said horse and the plaintiff refused, whereupon the defendant left
the horse with one Joseph Hatch, to work for his board in said
Lincoln, and afterwards notified him that said horse was there for

Mathews *v.* Fisk.

him and there was testimony to the contrary. April 15, 1873, the plaintiff paid the note to the defendant's indorsee.

There was testimony tending to show that on the twenty-third day of April 1873, two demands were made for the horse; first in the morning about eight o'clock at defendant's stable; and next at Lincoln in the street some hours later in the day; and that the defendant immediately replied that the plaintiff could have him, that he was ready for him at Mr. Hatch's stable; and there was testimony to the contrary. Hatch's stable was within eight or ten rods of the place of demand. The plaintiff did not go to get said horse or see if he was at Hatch's stable; and the defendant testified that he had not seen him for a week or a month previous and did not know whether he was then in that stable or not.

This action was commenced in a few hours after demand. The plaintiff made no objection to the place of delivery, and there was no proof by the defendant that the horse was at the stable at the time of the demand.

The defendant's counsel requested the judge to instruct the jury that if at any time after the defendant took the horse and before the plaintiff's demand on the twenty-third day of April, 1873, and before the commencement of this suit, the defendant requested the plaintiff to appoint a place where he would receive said horse, and the plaintiff refused, the defendant had a right to deliver said horse for the plaintiff at a convenient place where the plaintiff could get him, and that the delivery at Mr. Hatch's for the plaintiff, if it was a convenient place was sufficient, and that the defendant is not bound to prove that the horse was in Hatch's stable on the twenty-third day of April, 1873, at the time of plaintiff's demand.

He also requested the judge to instruct the jury that if they find that said horse was taken on account of the conditions of said mortgage having been broken, the plaintiff cannot maintain an action of trover for the value of said horse; that in such a case the action should be replevin, or an action of the case for damages for withholding the property as by law provided; which instruc-

tions said presiding judge declined to give and the defendant excepted.

After stating the facts as claimed by each party the judge instructed the jury upon the law substantially as follows : "That is to say they made this arrangement, if you believe Fisk, that while the note was to be on seven months there was a provision in the mortgage for a payment of twenty-five dollars in money in one month and the balance in labor or money. If that was the bargain, and if you believe the paper was fairly and truly read to the plaintiff so that he knew the contents, the legal effect it was not necessary for him to know if the bargain was fairly reduced to writing, and fairly read and signed by him, it was binding upon him. He cannot say because he did not know what would be the effect of it, it was no bargain.

The plaintiff to sustain an action of trover must prove title in himself and right of possession at the time of the demand and refusal by the defendant, and a conversion by the defendant to his own use.

The first act of conversion which they allege, is that the property was taken somewhere about the twenty-first of May, that is in the next month of May, the precise date I do not know whether it is ascertained, that is for you to judge.

Now if the horse was then taken and this $25 remained unpaid, the month being complete and the plaintiff not paying the $25, as by the mortgage he was to, why Fisk had a right to take him. If the month had not expired then he had no right to take him. Now supposing the taking was rightful, was there any act of the defendant which tends to show a conversion ? It seems by strange or absurd conduct, the defendant sold his note for nothing and got his horse back again. Nobody wants the horse. They want to see how much money can be got out of it. Now was there a conversion ? It seems that in April 1872, the defendant took a mortgage of the horse ; that he took him from plaintiff in May, and afterwards sold it to Mr. Clark, and Mr. Clark let Mr. Hatch have it. There was a demand made for the horse on the twenty-

third day of April 1873. The plaintiff alleges a demand in the morning and another demand subsequently on the same day. The defendant says that the horse was at Hatch's stable, and that he said to the plaintiff 'go and take it.' But is there any proof that the horse was there or that by going there he could get the horse? He might not be there, or he might. If you find there was a demand made, if there was no evidence that the horse was there that was a conversion. If there was a conversion what was the fair cash value of the horse then?"

To which instructions the defendant excepted.

It will be noticed that the charge indicates that there was some uncertainty about the time when Fisk took the horse away from Mathews, but the evidence as reported mentions only the twenty-fourth day of May 1872, as the time, and this date is assumed to be correct in the argument of counsel for both parties; it is therefore the one adopted in the statement of the case.

*Wilson & Woodard* for the defendant.

*Lewis Barker* for the plaintiff.

APPLETON, C. J. This was an action of trover for a horse.

It appeared in evidence that the defendant on the twenty-third day of April 1872, sold the horse in controversy to the plaintiff, taking back from him a note on seven months and a mortgage conditioned to be void if the mortgagor should pay the defendant "a certain note of even date herewith, payable to said Fisk or order and signed by said Mathews, of one hundred dollars, said payments to be made as follows: twenty-five dollars to be paid in one month from date in cash, the balance to be paid in labor in driving logs this present season if said Mathews' labor shall be sufficient, otherwise in cash according to the tenor of the note. Provided also, that it shall and may be lawful for said grantor to continue in possession of the afore-described property without denial or interruption by said grantee until the conditions of this sale are broken."

The defendant in the following May took the horse from the

possession of the plaintiff. The question arose whether the taking was before or after the expiration of the month in which the payment of the twenty-five dollars according to the terms of the mortgage was to be made. As to this the instruction of the court was that if this sum of twenty-five dollars remained unpaid at the expiration of the month, the defendant had a right to take possession of the mortgaged horse, otherwise not. This instruction was sufficiently favorable to the defendant.

The defendant in the next fall transferred the note to one Francis by way of exchange for another note. Francis commenced a suit upon it and obtained judgment, which was satisfied and discharged April 15th, 1873.

The mortgage given by the defendant was never foreclosed. The defendant after taking possession of the horse sold the same to Joseph A. Clark, who in November 1872 sold the same to Joseph Hatch. In the following December the defendant purchased the horse from Hatch and left him with Hatch to work for his board.

There was testimony tending to show that on April 23, 1873, two demands were made for the horse; the first in the morning about eight o'clock at the defendant's stable, and the next at Lincoln in the street some hours later in the day. There was testimony tending to show that the defendant immediately replied that the plaintiff could have him, that he was ready for him at Mr. Hatch's stable, and testimony to the contrary. Hatch's stable was within eight or ten rods of the place of demand. There was no proof that the horse was at the place of delivery at the time of the demand. The plaintiff made no objection to the place of delivery. He did not go for his horse but during the day brought his action.

The counsel for the defendant requested the court to instruct the jury "that the defendant was not bound to prove that the horse was in said Hatch's stable on the twenty-third day of April 1873, at the time of the plaintiff's demand. This instruction the presiding justice declined to give but instructed the jury if there was a demand and the horse was not there, that would amount to a conversion.

The requested instruction was properly withheld. The defendant had no title to the horse whatever. His note had been paid. The plaintiff was entitled to the horse. No objection was made to the place or time of demand. The defendant had control of the horse. If he would make a tender of the horse or deliver him on demand, it was for him to see that the horse was at the place of delivery. The responsibility was on him that the horse should be there. The requested instruction was properly withheld.

If the horse was not at the place where it was stated to be, (and the defendant testified that he did not know whether it was or not) then there was a demand by the owner upon one having possession and control of his property and a misrepresentation as to where that property was. There was no surrender of possession but a direction to go where the property was not and get it. This was evidence tending to show a conversion. It would have been more correct to have stated to the jury that it was evidence from which a conversion might be inferred.

But by the defendant's own showing the mortgage note had been paid previously to the demand. After payment the horse was in the possession of a bailee of the defendant to be used at the will and pleasure of such bailee. The defendant, his note being paid, ceased to have any interest in or rightful control over the property of the plaintiff. That the horse was then at work for his board with Hatch by the authority of the defendant and under a contract with him was of itself a conversion of the plaintiff's property, for which the defendant was liable. So a sale by the mortgagee before foreclosure would be a conversion for which the mortgagor could maintain an action. *Spaulding* v. *Barnes,* 4 Gray, 330.

An objection is taken to the form of the action. By R. S., c. 91, § 3, after payment of the mortgage debt "the property if not immediately restored may be replevied or damages for withholding it recovered in an action on the case." The plaintiff therefore had his election to bring trover or replevin.

Upon the facts which are undisputed the defence fails. It does

not therefore become necessary to determine whether or not all the rulings under which the verdict was rendered are strictly correct. *Kimball* v. *Hildreth*, 8 Allen, 167.

*Exceptions overruled.*

CUTTING, WALTON, BARROWS, DANFORTH and PETERS, JJ., concurred.