## GRISWOLD *v.* MORSE.

It is no defence to an action, by an assignee in bankruptcy of a tenant of a farm, against the landlord for a conversion of the crops, that the tenant had abandoned the premises before the expiration of the lease; nor is the assignee bound to assume and perform the conditions of the lease. The landlord's remedy for the breach of the lease is by proving his claim for damages against the bankrupt's estate.

A mortgagee of personal property, purchasing the same at less than its value by inducing other persons not to bid at the mortgagee's sale, and immediately selling it to a person present at the auction sale for its .full value, at a price previously agreed upon, must account to the mortgageor for the sum received for the property.

A sale of mortgaged personal property by the mortgagee, after enough has been sold for the payment of the mortgage debt and costs, is a conversion for which trover lies.

TROVER, for thirty tons hay, four tons straw, one hundred and seventy-five bushels oats, seventy bushels buckwheat, twenty-five bushels potatoes, four tons corn-fodder, twelve loads manure, three cows, one bull, two calves, two horses, one hog, one pair harnesses, and one hundred and fifty bushels potatoes. Writ dated January 20, 1877. The plaintiff is assignee in bankruptcy of Frank P. Winn, who was adjudged bankrupt, upon petition of his creditors, February 11, 1876. The action was sent to a referee, who reported in favor of the plaintiff, assessing damages in the sum of $310, and interest from November 25, 1875. The referee reported the following facts : From April 1, 1874, to about November 10, 1875, Winn was in the occupation of the defendant's farm, under a written lease for the term of three or five years from April 1, 1874. In the fall of 1875, Winn and the defendant had trouble, and attempted to make a settlement of matters in controversy between them ; and the defendant claimed that a settlement was perfected by which the hay, straw, oats, buckwheat, two cows, two calves, hog, and harnesses named in the plaintiff's declaration became his property. The defendant claimed the horses, one cow, and the bull, by virtue of a mortgage from Winn to himself, executed April 2, 1875.

Winn abandoned the defendant's farm about November 10, 1875, and left the defendant in sole possession thereof, and also left thereon the property named in the plaintiff's declaration, which the defendant then claimed to hold, aside from the manure and corn-fodder, by virtue of an attachment in his favor and the mortgage and alleged settlement. The attachment was afterwards abandoned. All the crops were raised on the farm, and were to be spent thereon by the terms of the lease, and the referee found the value thereof accordingly. No settlement was made between the parties. The defendant contended that a demand by the assignee was necessary before suit. No demand was made. The hay, oat-straw, oats, and buckwheat had been consumed or sold by the defendant before suit, and the cow, calves, and harnesses had been used and treated by him as his own property after the abandonment of the farm by Winn. The defendant also contended, as to the crops, that Winn's right therein was subject to the performance of the conditions of the lease ; that the plaintiff, as assignee, could obtain no title to the crops without performance of the conditions ; that the contract

embodied in the lease was not assignable; and that the plaintiff could therefore recover nothing for the value of the crops. The plaintiff did not offer to carry out Winn's contract under the lease, and has not done so.

The defendant, as mortgagee, sold at auction the horses, bull, and one cow, embraced in his mortgage, on the 23d day of December, 1875. At the time of the sale, there was due on the mortgage about $208.50, to which should be added expenses of sale—in all, $212. The defendant bid off the horses for $150, the cow for $50.05, and the bull for $27—in all, $227.05. Two or three weeks before the sale, the defendant had bargained the horses to one Fay for $237.50, and had received part of the pay therefor, and immediately after the sale he delivered the horses to Fay at that price. Fay publicly stated at the sale that he had bought the horses of the defendant, and consequently no one but the defendant made a bid for them. The horses were worth $237.50. At the mortgage sale the horses were first sold. The plaintiff claimed that the defendant should be charged with the value of the cow and bull. If the court so hold, then $77.05 and interest should be added to the amount of damages.

*Carpenter, Putnam*, and *Bingham & Mitchell*, for the plaintiff.

*Duncan* and *Ladd & Fletcher*, for the defendant.

The bankrupt's only claim to the crops was under a written lease stipulating that the crops should be spent on the farm. Such a lease gives the tenant only a limited right in and to the crops. *Moulton* v. *Robinson*, 27 N. H. 550; *Hatch* v. *Hart*, 40 N. H. 93; 1 Washb. Real Prop. 501. No right of action exists in favor of the assignee, under the circumstances disclosed in the case, so far as the crops are concerned. There was a breach of the contract by the bankrupt, and although it may be true that for any breach of the contract by the bankrupt the defendant would have a remedy by way of an action on the contract, if he was the active party, still we say he can defend this suit on the ground that whatever he did he was induced to do or compelled to do in consequence of the breach by the bankrupt. The bankrupt abandoned his contract. If any right passed to the assignee, it was only the qualified right that the bankrupt had, and he must either offer to perform the contract, or do away in some manner with the effect of the bankrupt's breach of it, before he can have a right to recover in this form of action against the defendant. The defendant had a valid mortgage of the horses, cow, and bull, and advertised them for sale. The horses were sold at $150. It was a public sale. Everybody had a right to bid: the defendant, by the statute, is allowed to bid, and he did so: any trade that the defendant had previously made to sell the horses to Fay is of no account. The fact that the defend-

ant got them for a less price than he sold them for is not of itself evidence of any fraudulent conduct on his part. The horses were sold and bid off for less than the mortgage debt, and the cow and bull sold for enough to pay the balance. Nothing appears but what the sale was fair in every respect, except that the plaintiff claims that Fay made a statement that he had bought the horses, and thus prevented other parties from purchasing. How he would thus make the defendant a wrong-doer in selling property which he had a valid mortgage of, and out of which he was trying in good faith to get his money, we are entirely at a loss to know. It seems to us that there is no law to sustain the plaintiff's claim on this branch of the case. The sale was a public one : the defendant prevented no one from bidding, nor did he act fraudulently or corruptly. Nothing to show that he so acted appears in the case.

CLARK, J. The defendant claims part of the property as mortgagee, and the residue by virtue of a sale or settlement with the bankrupt. The case finds there was no sale. There was evidence tending to show a conversion by the defendant, and no demand was necessary. The contract between Winn and the defendant was not a hiring of the farm on shares or at the halves, whereby the whole or a portion of the crops was reserved in lieu of rent. Winn was the owner of the crops, and his abandonment of the farm did not divest his title, or transfer it to the defendant. For any damages the defendant sustained by reason of Winn's breach of his contract, he could prove his claim in bankruptcy. He cannot set up such claim in defence of this action, nor is the plaintiff, as assignee, bound to assume and perform the conditions of the lease. *Streeter* v. *Sumner*, 31 N. H. 542. The defendant received $237.50 from the sale of the horses, which exceeded the amount of the debt secured by his mortgage. The formal sale at auction, for the nominal sum of $150, the defendant being the purchaser, was not a sale made in good faith. It was understood to be a mere formality, necessary to enable the defendant to give Fay a title to the horses, which he had previously bargained for at the price of $237.50, part of which had already been paid. The case finds that Fay stated publicly at the sale that he had bought the horses of the defendant, and consequently no one but the defendant made a bid for them. By the previous agreement with Fay, the defendant prevented Fay from bidding at the auction, and Fay, by his announcement of it, prevented all others from bidding. Such a sale cannot be upheld. It was in effect a sale of the horses to Fay for $237.50, the defendant acting as his agent in making the bid. The parties so understood it, and the horses were delivered to Fay immediately after the auction, at that price. The defendant having received from the sale of the horses a sum more than sufficient to discharge the mortgage debt and costs, the subsequent sale of the other property was a conversion, and the plaintiff is entitled to

recover the sum for which it was sold, with interest. *Thompson* v. *Currier*, 24 N. H. 237, 239; *Leighton* v. *Shapley*, 8 N. H. 359; *Mathews* v. *Fisk*, 64 Me. 101, 107; *Hutchins* v. *King*, 1 Wall. 53; *Charter* v. *Stevens*, 3 Denio 33.

*Judgment for the plaintiff.*

SMITH, J., did not sit: the others concurred.