## SLOAN v. NATIONAL SURETY CO.

(Supreme Court, Appellate Division, First Department. February 9, 1906.)

**1. CHATTEL MORTGAGES—POSSESSION BY MORTGAGEE—EVIDENCE.**

That a mortgagee took actual possession of the mortgaged machinery and retained it till the sheriff took it on execution against the mortgagor may be found on evidence that on default he claimed he was entitled to possession, that the mortgagor acquiesced, that he went into the room where the machinery was, looked it over, and announced that he took possession and that it belonged to him, and then leased the room and paid the rent, and thereafter the mortgagor ceased to do any work in the room, or do any act hostile to or inconsistent with the mortgagee's possession, though the mortgagor's president was occasionally about the room, and its secretary volunteered to and did disburse the mortgagee's money in paying the employés.

**2. SAME—LIABILITY TO THIRD PERSON FOR CONVERSION.**

The indemnitor is liable to a mortgagee as for a conversion where the mortgaged chattels in the possession of the mortgagee are levied on and sold under execution against the mortgagor; the sheriff requiring an indemnity bond before he would make the levy and another before he would make the sale.

Appeal from Trial Term, New York County.

Action by Augustus K. Sloan against the National Surety Company. From a judgment dismissing the complaint, and from an order denying a motion for a new trial, plaintiff appeals. Reversed.

Argued before O'BRIEN, P. J., and McLAUGHLIN, INGRAHAM, LAUGHLIN, and CLARKE, JJ.

Albert R. Hager, for appellant.
Charles A. Boston, for respondent.

McLAUGHLIN, J. On the 5th of August, 1897, the plaintiff loaned to the Haney Manufacturing Company, a domestic corporation, the sum of $5,000, under a written agreement executed on that day, which, among other things, provided that the corporation, for the purpose of securing payment of such loan, should execute and deliver to the plaintiff bills of sale of its machinery and plant; the corporation, however, to remain in possession and use the property covered by the bills of sale in conducting its business. The loan was for one year, and, if default were made in the payment of the same, then the agreement provided that the legal title should thereupon vest and become absolute in the plaintiff. Pursuant to this agreement the plaintiff received three bills of sale, covering the machinery and property therein specified, one of which was executed by the corporation and two others assigned by a person who had legal title to a portion of the property. Upon their receipt the plaintiff filed them in the register's office in the county of Kings. On the 5th of August, 1898, the day when the loan matured, plaintiff went to the place of business of the corporation, requested payment, and, the same being refused, demanded and, as he claims, took possession of all of the property covered by the bills of sale. On the 29th of July, 1898, the Cycle Age Company of Chicago, Ill., recovered a judgment against the corporation in the Supreme Court of New York for the sum of $453.16, and an execution was issued thereon to the sheriff of Kings county on the

1st of August, 1898. The sheriff, through his deputy, undertook to enforce the same by going to the place of business of the corporation, and there attempted to make a levy; but he was then informed that the plaintiff had bills of sale of all of the property on which a levy was sought to be made, which were on file in the register's office. Before proceeding to perfect the levy and enforce the execution the sheriff demanded a bond of indemnity from the Cycle Age Company, and the latter procured the same on August 9, 1898, from the defendant in this action in the sum of $1,500. Thereafter the sheriff perfected his levy by taking the property into his possession and advertised the same for sale. The plaintiff demanded that the levy be released and the possession of said property returned, and then a further bond of indemnity was required, in pursuance of which, on the 31st of August, 1898, an additional bond was given by the defendant in the sum of $2,000, after which the sheriff advertised the property for sale, and the same was sold on the 6th of September, 1898, for $732. The plaintiff then brought this action to recover the value of such property, on the ground that the same was wrongfully and unlawfully converted by defendant.

There have been two trials. The first resulted in a verdict for the plaintiff for the value of the property sold, but upon appeal the judgment was reversed (Sloan v. Nat. Surety Co., 74 App. Div. 417, 77 N. Y. Supp. 428); this court holding that the bills of sale, when construed in connection with the agreement, were in fact chattel mortgages, and, the property covered by them having been permitted to remain in the possession of the mortgagor, the plaintiff, in order to protect his rights, was required, when the loan matured, either to refile his mortgages or take actual possession of the property, and he did not establish that he had done either. At the conclusion of the second trial the defendant moved to dismiss the complaint or for the direction of a verdict, pending the determination of which the court submitted three questions to the jury for special findings thereon: (1) Whether the plaintiff on the 5th of August, 1898, took actual possession of the property; (2) if he did, whether he thereafter retained such possession until the levy by the sheriff; and (3) what damage the plaintiff suffered, if he were the owner of the property. The first and second questions were answered by the jury in the affirmative, and the third $4,611.20. The special verdict was recorded, the jury discharged, and the motion to dismiss the complaint granted, to which an exception was taken. Judgment was subsequently entered to this effect, from which the plaintiff appeals.

The learned trial justice was evidently of the opinion that the evidence on the second trial had not been materially changed from what it was on the first trial, and, if he were correct in this, then the complaint was properly dismissed under our former decision. There was no evidence that the mortgages were refiled, and the only remaining question is whether the evidence tended to show and was sufficient to sustain a finding that the plaintiff on the 5th of August, 1898, took actual possession of the property covered by the mortgages and thereafter remained in actual possession until the same was taken from him by the sheriff.

On the first trial substantially the only evidence bearing upon the question of possession was that given by the plaintiff himself, in which he stated that when he demanded payment of the loan and the same was refused he demanded and took possession by going into the room, putting his hands on the different pieces of machinery and announcing that the same were his; that none of the machinery was removed, and after the execution of the several bills of sale the same "was continued in use by the Haney Manufacturing Company in connection with its business up to the time of the sale by the sheriff." This did not constitute taking actual possession, but at most constructive possession. Steele v. Benham, 84 N. Y. 634.

On the second trial, however, the plaintiff testified—and the credibility of his testimony, in so far as the same was in conflict with that given by him on the first trial, was for the jury—that on the 5th of August, 1898 (the day the loan fell due), he demanded payment; that this was refused; that he then went into the room where the machinery was and claimed the property; that he put his hands on all of the machinery and claimed it; that on that day he leased the room in which the machinery was from Mr. Tollner, the owner; that in order to get the lease he had to pay the rent from the 1st of the preceding July; that he paid the rent for the months of July, August, and September. He produced a letter, which he wrote to the landlord on the 5th of August, in which he stated:

"I will take the floor now occupied by the Haney Manufacturing Company, 290 Graham street, Brooklyn, paying you $100 per month for same, subject to a two weeks' notice on either side, however, to terminate this agreement, which is understood to date from July 1st, 1898. Enclosed please find my check for $100 for July rent, for which please send me receipt and oblige."

In this letter was inclosed a check for $100. He also produced the answer of the landlord, written on the same day, in which he stated:

"Replying to your favor of even date, and acknowledging receipt of your check for $100 to pay the rent for the month ending July 31st, for floor now occupied by the Haney Manufacturing Company, I would say that I will mail you a properly drawn receipt for same shortly."

The check which was inclosed in the letter of August 5th was introduced in evidence. It was dated August 4th, was for $100, payable to the order of Tollner, was indorsed by Tollner, and payment made through the clearing house on the 5th of August. The plaintiff further testified that the Haney Manufacturing Company did no business in the room after the 5th of August, and that the only business which was done there was done by plaintiff himself in finishing up orders taken for him, and that all of the persons employed in doing this business were paid by him or persons representing him with cash which he furnished for that purpose.

As to the leasing of the rooms he was corroborated by Tollner, who testified that on the 5th of August, 1898, he leased to the plaintiff the room in which the machinery was stored; that the lease of the Haney Manufacturing Company expired on the 30th of April, 1898, and it continued to occupy the premises thereafter down to August 5, 1898, merely as monthly tenants, but did not pay the rent for the month of July, and under the arrangement with the plaintiff he paid

the rent for that month. He further testified that he received the letter written by the plaintiff on or about the 5th of August, 1898, and that he wrote the one above quoted in reply thereto; that in that letter was the check referred to, which was used by him.

The plaintiff was also corroborated in material respects, both as to his leasing the room on the 5th of August and taking actual possession of the premises on that day, by the witness Haney, who was the president of the Haney Manufacturing Company. He stated that the Haney Manufacturing Company had a lease which expired on the 30th of the preceding April, and from that time on it occupied the premises as monthly tenants, and as such paid the rent to the 1st of July; that proceedings were about to be taken to dispossess it for nonpayment of rent and on the 5th of August, 1898, the plaintiff leased the premises which it had previously occupied; that on that day he demanded payment of his loan, which was refused, and thereupon he went into the factory, put his hand on each machine, each piece of goods, and said: "This is my property." This witness further testified that no work was thereafter done in this room by the Haney Manufacturing Company; that the plaintiff employed and paid a few persons to finish up an order which he had taken; that the last pay roll of the Haney Manufacturing Company was either the last of June or 1st of July; that the last business which the corporation did was early in July. The plaintiff was further corroborated by the witness Holland, the secretary of the Haney Manufacturing Company, who testified that the last check drawn by the company was on the 13th of June, 1898; that on the 5th of August following the corporation was not doing any work in the room; that after that date there were one or two girls and possibly one or two men who were employed to finish some work for the plaintiff; that the witness paid these employés with money furnished by the plaintiff. The testimony of these witnesses was not disputed or contradicted in any way, inasmuch as the defendant offered no evidence, except in so far as the same was discredited by cross-examination; and I am clearly of the opinion that there was not only sufficient evidence to go to the jury upon the question of whether the plaintiff on the 5th of August took and thereafter remained in actual possession until after the levy was made, but that a finding to the contrary would be against the weight of evidence.

When default occurred in payment of the amounts secured by the chattel mortgages, the legal title to the property covered by them vested absolutely in the plaintiff, and the only interest which the Haney Manufacturing Company thereafter had was the mere naked equity of redemption. Casserly v. Witherbee, 119 N. Y. 522, 23 N. E. 1000; Charter v. Stevens, 3 Denio, 33, 45 Am. Dec. 444; Stoddard v. Denison, 38 How. Prac. 296. In order, however, to protect this right, it was necessary for the plaintiff to take actual possession; but in doing so it was not necessary for him to remove the machinery to some other room or take it into the street and then carry it back into this room. He could just as effectively take actual possession by taking possession of the room in which the machinery was and excluding the Haney Manufacturing Company therefrom. This is precisely what the jury was justified in finding from the evidence that he

did. He claimed he was entitled to possession, which fact was recognized by the mortgagor by its acquiescing in the correctness of his claim. He went into the room where the machinery was, looked it over, and announced that he took possession and that it belonged to him. He leased the room and paid the rent, and thereafter the mortgagor ceased to do any work in the room, or do any act hostile to or inconsistent with plaintiff's possession. The fact that Haney, the president of the company, was occasionally about the room, or that Holland, the secretary, volunteered to disburse plaintiff's money in paying the employés, could not destroy plaintiff's interest, if he had previously obtained possession. What else should he have done? It is difficult to suggest an answer. He had done all, as it seems to me, that the law required. The jury, therefore, was justified, from the evidence, in finding that the plaintiff on the 5th of August, 1898, took and thereafter continued in actual possession of the property until the same was taken from him by the sheriff, and that he had been damaged to the extent of the value of the goods. If I am correct in this, then the trial court erred in dismissing the complaint. It should, instead, under the stipulation, have directed a general verdict in favor of the plaintiff for $1,611.20, the value, as found by the jury, of the goods taken by the sheriff.

The defendant, as already indicated, gave the bonds to indemnify the sheriff in making the sale; but, notwithstanding that fact, it strenuously urges that it cannot be held liable for conversion of the property, inasmuch as it did nothing further. This same question was presented on the former appeal, and in reversing the judgment then appealed from, and ordering a new trial, we necessarily determined (otherwise there would have been no occasion for ordering a new trial) it adversely to the contention. The sheriff refused to sell the property until he had received bonds indemnifying him against damage. The defendant gave the bonds which brought about the sale, and by that act made itself liable as principal for the original wrongful seizure, as well as for the sale. Dyett v. Hyman, 129 N. Y. 351, 29 N. E. 261, 26 Am. St. Rep. 533; Ball v. Loomis, 29 N. Y. 412; Herring v. Hoppock, 15 N. Y. 411; Cassani v. Dunn, 44 App. Div. 248, 60 N. Y. Supp. 756; Posthoff v. Bauendahl, 43 Hun, 570; Davis v. Newkirk, 5 Denio, 92. The defendant by the mere act of giving the bonds induced the sheriff to do an unlawful act, in which it participated. It therefore became jointly and severally liable with the sheriff for all the damages sustained, to recover which the plaintiff could, at his option, maintain an action against them jointly or severally. Wehle v. Butler, 61 N. Y. 245; Van Dewater v. Gear, 21 App. Div. 201, 47 N. Y. Supp. 503; Rose v. Oliver, 2 Johns. 365.

If the foregoing facts be correct, then it follows that the judgment and order appealed from must be reversed; and, while this court has the power to direct judgment for the plaintiff on the special verdict. we think that justice will be best subserved in this case by ordering a new trial.

Judgment and order reversed, and new trial ordered; costs to appellant to abide event. All concur.