Di Giovanna, J.
(dissenting). This is an appeal by permission of this court from an order substituting as defendant the National Surety Corporation in place and stead of Jesse P. Combs, the Sheriff of Nassau County.
Three executions were delivered to the Sheriff in the following cases: (1) Rowe Manufacturing Company, Inc. v. Sandy Moore Distributing Corporation; (2) Commissioner of the State Insurance Fund v. Sandy Moore Distributors Corp.; and (3) Huit Corporation v. Sandy Moore Distributors Corp.
Note that judgment No. 1 was against “ Distributing Corp.” while judgments Nos. 2 and 3 were against “ Distributors Corp.”
On November 11, 1958 Sandy Moore Distributing Corp., by Sanford J. Moore, its president, executed a “ Retail Instalment Contract ” to Croasdale Cadillac, Inc., which was subsequently assigned to the General Motors Acceptance Corporation. Pursuant to the provisions of this contract, title was reserved to the seller until such time as the complete purchase price had been paid. Upon default for any reason by the Sandy Moore Distributing Corp., the seller had the right to repossess. Title always remained in the seller until complete payment was made. Repossession by a seller is governed by section 76 of the Personal Property Law wherein it is stated: “Unless the goods can be retaken without breach of the peace, they shall be retaken by legal process ”. The seller’s rights pursuant to sections 76 to 80-f are intended to be exclusive and the procedure therein set forth is comprehensive (McManus Laboratories v. Madelon Condon Aesthetics Salon, 21 N. Y. S. 2d 826). It has been held, also, in that case that a conditional vendor has a conditional title.in chattels, not a lien, and if unable to take chattels peaceably is required to resort to an action in replevin.
There seems to be no question but that the first notice the General Motors Acceptance Corp. had of a claimed default of the purchaser was when levy was made upon the automobile.
The attorney for Huit Corporation, the judgment creditor on execution No. 3, directed the Sheriff to levy on a 1959 Cadillac, claiming that it was the property of Sandy Moore Distributors Corporation. Consequently, on June 2, 1960, the Sheriff served a notice of levy wherein he listed all of the executions in his *661 possession. According to the affidavit of Percy A. Southard, a deputy of the Sheriff, “ thereafter and by virtue of said execution, Carmen Tavalero, a bonded Deputy Sheriff of Nassau County, levied upon a 1959 Cadillac Convertible, identification No. 59 FOO 2344, which 1 believe to be the property of the said Sandy Moore Distributors Corp.”
By notice dated June 8,1960 the Sheriff advertised the sale of the above property at public auction to be held on June 17, 1960 by virtue of the three executions and the notice of sale which listed these three executions. It is apparent on the face thereof that there is a difference in name between the defendant in the first execution and the other two executions. The notice stated that the property was to be sold “ subject to any and all chattel mortgages and/or conditional sales contracts.”
On June 16, 1960, one day before the sale was to be held, G-eneral Motors Acceptance Corporation claimed the property by a third-party claim in accordance with the provisions of section 696 of the Civil Practice Act.
Section 696 of the Civil Practice Act provides, in part, as follows: “If personal property levied upon as the property of the judgment debtor is claimed by or in behalf of another person, as his property, an affidavit shall be made and delivered to the sheriff by or in behalf of such person at any time while such property or the proceeds thereof are in the sheriff’s possession, stating that he makes such a claim; * * * In that case, the sheriff in his discretion, before he sells such personal property * * * may serve upon the plaintiff’s attorney a copy of the affidavit, with a notice, that he requires indemnity against the claim. If the indemnity is not furnished within three days after demand has been made by the sheriff, the sheriff, in his discretion, may deliver the property * * * to the claimant, without incurring any liability to the plaintiff by reason of so doing; unless within three days after demand for indemnity the judgment-creditor shall institute a proceeding for the purpose of having the title to the claimed property * * * determined. The court or judge before whom the proceeding is brought, shall hear and determine the title thereto, and for that purpose, the judge hearing the proceeding, may, in his sole discretion, impanel a jury. * * * If, by such proceeding, it is determined that the property belongs to the claimant, it shall be delivered to him and the sheriff shall be thereby released from all claim for damages.” The pertinent portions of section 696 have been set forth and the portions pertaining to the rights of the parties if the claim is made after the sale have not been *662 set forth. There is no doubt that the claim here by the plaintiff was made before the sale and that the Sheriff served the notice before the sale. It seems to be unquestioned that the Sheriff exercised his discretion before selling the personal property and after receiving the notice of claim from the General Motors Acceptance Corporation by requiring the furnishing of indemnity within three days from the commencement of an action to determine title within that time.
Having received this claim from General Motors Acceptance Corporation that the automobile belonged to it, the Sheriff then proceeded to make a demand for indemnity from each of the judgment creditors. Actually, it now having been called to his attention that the automobile belonged to the Distributing Corporation, and not to the Distributors, he should not have made demand for indemnity from the Distributors Corporation because he was powerless to sell the Cadillac in order to satisfy the judgment in favor of the judgment creditors against the ‘ ‘ Distributors Corporation. ’ ’ In any event, it is apparent from section 696 that the judgment creditors had three days’ time after the demand to furnish the bond, or three days’ time after the demand to institute a proceeding for the determination of title.
On June 17, 1960 only Huit Corporation furnished the bond issued by the National Surety Corporation. Three days had not yet elapsed from the date of the Sheriff’s demand for security. That bond, following the penal provision, specifically stated as follows:
“ Whereas the above Sheriff is about to direct a levy upon certain property of the defendant pursuant to the direction of the plaintiff and its attorney, Irving Sehleimer, namely 1959 Cadillac Convertible Serial No. 59F002344, registered in the name of Sandy Moore Distributors Corp., and
‘ ‘ Whereas, the Sheriff of Nassau County has demanded indemnity from the plaintiff pursuant to Section 696 of the Civil Practice Act ”.
The indemnitor undertook to hold the Sheriff free from liability in an action brought against him by claimant.
The title of the action on the bond is clearly described as
Huit Corp., plaintiff against Sandy Moore’s Distributors Corp., defendant and General Motors Acceptance Corporation, 3rd-party claimant.”
It is beyond a doubt that the information for the contents of the bond was delivered to the indemnitor by the attorney for the Huit Corporation.
*663 Without waiting for any further developments to see whether within three days the other judgment creditors either delivered a bond or instituted a proceeding for the purpose of having title determined, the Sheriff, nevertheless, proceeded to make the sale on June 17, two days short of the required waiting time which follows the exercise of the discretion by the Sheriff to make the demand for security. Just prior to the time that the sale was actually made, Irving G-. Schleimer, the attorney for Huit Corporation, brought to the Sheriff’s attention the fact that G-eneral Motors Acceptance Corporation claimed that the automobile had been sold to Sandy Moore Distributing Corporation, and that consequently it could not be sold under an execution involving Sandy Moore Distributors Corp. He further advised the Sheriff by letter dated June 16, 1960 that “ any levy and/or sale conducted by you for the benefit of Rowe Manufacturing Co. Inc. is at your peril. This execution and judgment is invalid as against Sandy Moore Distributors Corp.” There was a claim made in his affidavit of December 7,1960 submitted in opposition to the motion for substitution that the records of the Secretary of State failed to disclose the existence of any corporation known as Sandy Moore Distributing Corp. Nevertheless, the judgment of Rowe Manufacturing Co. Inc. against Sandy Moore Distributing Corp. established the existence of Sandy Moore Distributing Corp. as a factual entity. Nothing has ever been done to vacate that judgment or correct the name of the defendant, or to claim that one other than Sandy Moore Distributing Corp. was the actual purchaser, if correction is possible. Nothing appears in the papers to indicate that Rowe Manufacturing Co. Inc. had any cause of action against Sandy Moore Distributors Corp. or had ever done any business with Sandy Moore Distributors Corp.
As indicated before, the retail installment contract had been signed with Sandy Moore Distributing Corp. and not Sandy Moore Distributors Corp.
The Sheriff claims that it was not up to bim to determine whether or not the Distributing Corp. and the Distributors Corp. were one and the same because that would have been a judicial determination. Actually, no one called upon him to make a judicial determination but only to sell the property of the respective judgment debtors. When it became apparent to him that he could not sell the Cadillac as the property of the judgment debtor Distributors Corp., he should have refused to make such sale. That would not have been a judicial determination. That would have been an administrative determination *664 based upon the papers in front of him and submitted to him by the respective parties.
The legal position taken by National Surety Corporation is that it undertook to indemnify in the case of Sandy Moore Distributors Corp.' and not Sandy Moore Distributing Corp. Consequently, it takes the position that the Sheriff, having chosen to rush the sale on the advertised day instead of forestalling it, acted on his own behalf and did not bind the surety because the surety had not undertaken so comprehensive a coverage.
Incidentally, at the public sale, while Mr. Southard claimed the automobile was sold for $230, subject to chattel mortgages and conditional sales contracts, it is disputed in other affidavits and it is claimed that the Cadillac was sold for $30 and a second automobile was sold for the additional $200. It was further claimed that the purchase was made by a member of Huit Corporation, which is denied in another affidavit.
The affidavit of John D. Caemmerer, a Deputy County Attorney of Nassau County, states that the Sheriff takes the following position: “ A sheriff must execute a mandate of this court, in this case an execution against the personal property of a judgment debtor and make a proper return.”
The automobile, obviously, was not the property of the Distributors Corporation and, except for the installment contract between the Distributing Corporation and the seller, was on the face thereof the property of the Distributing Corporation. Consequently, it is apparent that the Sheriff was not called upon to sell the automobile as the property of the Distributors Corporation but sell the same as the property of the Distributing Corporation. The affidavit goes on to say: 1‘ For failure to do so any party in interest may compel a return by application to the court or bring an action against the sheriff for damages. Where the sheriff fails to return a property execution he is, in the first instance, liable for the amount of the judgment although he may mitigate his damages by showing the judgment debtor did not have sufficient property out of which whole or part of the judgment could be satisfied.” That argument is specious. Section 640 of the Civil Practice Act says: ‘‘ An execution * * * must require the sheriff to return it to the proper clerk within sixty days after the receipt thereof unless the time for such return is extended at the request or with the consent, in writing, of the party on whose behalf the execution was issued, or of his attorney, in which event the sheriff must return such execution within the time as thus extended.” Certainly Huit *665 Corporation warned the Sheriff not to proceed with the sale. Section 696 would have protected the Sheriff against a failure of return if after three days the judgment creditors had failed to file a bond or commence an action for the termination of title to the property. The Sheriff, faced with such facts, was bound to ask the parties to extend his time for return of the execution, as provided in section 640. No such attempt has been shown herein.
No harm could have come to the parties under the circumstances of this situation if a delay in the sale had been effectuated until title was determined judicially.
While claim is made that there are no records of the Secretary of State that Sandy Moore Distributing Corporation exists, the possibility is not excluded of such existence pursuant to the laws of any other State, nor its existence as a de facto corporation. National Surety had the right to determine whom it would bond and under what circumstances it would issue a bond. If the facts had been related to it that there were two corporations in existence, one the Distributing Corporation, and the other Distributors Corporation, it might have, in its discretion, refused to issue this bond. It had the right to refuse.
In his affidavit Mr. Caemmerer further says where another person makes a claim to the personal property levied upon, the Sheriff, in his discretion, before he sells such personal property, or, in case the personal property has been sold, before paying out the proceeds, may serve upon plaintiff’s attorney a notice that he requires indemnity against the claim. If the indemnity is not furnished within three days, the Sheriff may deliver the property to the claimant without incurring any liability.
In this case it is clear that the bond was issued as concerns the Sandy Moore Distributors Corp. alone and not to cover Sandy Moore Distributing Corp. Therefore, the Sheriff, in his discretion, ■ should have elected to return the property to General Motors Acceptance Corporation as the owner of the property and could have with immunity refused to sell it pursuant to executions issued as against the Distributors Corporation. No liability could have attached to him under such circumstances.
Section 697 gives the right to General Motors Acceptance Corporation to bring the instant action.
Section 698 says that the indemnity bond furnished to the Sheriff by the judgment creditor, as provided in section 696, will “indemnify him against any liability for damages, costs or expenses to be incurred in an action brought against him by *666 the claimant * * * by reason of levying upon or selling such personal property or delivering the proceeds thereof as the case may be ”.
Section 699 provides that where in “an action to recover a chattel or chattels hereafter levied upon by virtue of an execution, or several executions- * * * or to recover damages by reason of a levy or levies upon detention, sale or sales of personal property hereafter made by virtue of an execution or several executions * * * is brought against * * * a person * * * if a bond * * * indemnifying the officer against the levy or levies, or other act or acts, has been given in behalf of the judgment creditor or the several judgment creditors * * * may apply to the court for an order to substitute the applicant or several applicants as defendants in the action in place of the officer or of the person so acting by his command or in his aid; and the court, upon application of the officer * * * may grant an order substituting the indemnitors as defendants in the action in place of the officer or of the person so acting by his command or in his aid.”
Section 704 provides that an order made as prescribed in the last five sections does not affect the merits of the cause of action or of the defense except so far as it limits the controversy to the particular property.
Section 705 provides that where the action is brought in a case where an application for an order of substitution may be made, the officer to whom the bond was given cannot maintain an action on the bond against the indemnitor unless notice of the commencement of the action against the Sheriff is given before the trial of the action on the bond.
It is my opinion that, under the peculiar facts of this case, the position taken by the National Surety is proper. It should not be called upon to defend this action as a substituted defendant. The Sheriff should be required to defend alone. To protect his rights the Sheriff might have vouched the National Surety in the manner provided in the Civil Practice Act, or at least given notice to it of the pendency of the action. The issues between the Sheriff and the National Surety Corporation need not be tried out at this time.
The possibility exists that the indemnitor might have been added as a necessary party, together with the Sheriff, leaving all of the issues in the case to be determined in the District Court. However, it is, at this time, not clear whether the jurisdiction of the District Court encompasses such a situation. I think that the best procedure under the circumstances would be *667 to reverse the order of substitution, without prejudice to the Sheriff to exercise the relief suggested in section 705. The Sheriff should be compelled to try out the issues between General Motors Acceptance Corporation and himself. In the event that he establishes therein that the Distributing Corporation and the Distributors Corporation are one and the same and for that reason defeats the rights of the General Motors Acceptance Corporation, then and in that event he may be in a position to sue the National Surety Corporation, but it seems to me to be wrong to compel the National Surety Corporation to undertake, at this time, the expense of litigation involving property of a corporation which was not covered in the bond which it issued.
The cases cited by the Sheriff in his brief (Fleig v. Gorman, 1 Misc. 194; Sloan v. National Sur. Co., 111 App. Div. 94, 100; Dyett v. Hyman, 129 N. Y. 351, 355) have no application to this unusual situation.
In the Fleig case (supra, p. 194) the court said that the purpose of the practice provision is to authorize the substitution of the indemnitor for the Sheriff in order to enable the latter ‘ ‘ to let himself out of a litigation * * * in reference to which he had merely performed an official duty ”. The sale of property not belonging to the judgment debtor named in the bond was not the performance of an official duty within the purport of the bond and consequently that case is not applicable.
In the Dyett case (supra, pp. 355-356) the court said: “ Their liability for the original trespass committed by the sheriff was presumptively established by their approval and satisfaction of his act, manifested by the execution of a bond of indemnity to him. The sale of the property was secured by this bond, and the defendants were thereby shown to have exercised a controlling authority over the action of the sheriff in procuring the consummation of the wrong complained of, and thereby made themselves liable as principals for the original unlawful taking.”
However, it is clear from the facts established in this record that the attorney for Huit Corporation brought to the attention of the Sheriff before he consummated the sale the difference in the names of the judgment debtors and the fact that a claim was made that the automobile had never been owned by the Distributors Corporation and consequently could not be sold as the property of the Distributors Corporation. The Sheriff, by waiting for the additional period of time required under section 696 of the Civil Practice Act, would have enabled himself to have cleared himself of any liability in the event that a bond was not furnished by the other judgment creditors by returning the automobile to the General Motors Acceptance Corporation.
*668 I therefore recommend that the order be reversed and the motion for substitution of parties denied.
Hart and Benjamin, JJ., concur; Di Giovanna, J., dissents in opinion.
Order affirmed.